No. 2--03--0865

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

THE PEOPLE OF THE STATE OF      ) Appeal from the Circuit Court

ILLINOIS,      ) of Lake County.

      )

Plaintiff-Appellee,        )

      )

v.      ) No. 00--CF--2724

      ) 

CARL D. YOUNG,               ) Honorable

      ) Christopher C. Starck,

Defendant-Appellant.        ) Judge, Presiding.

______________________________________________________________________________

JUSTICE BYRNE delivered the opinion of the court:

Defendant, Carl D. Young, petitioned for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122--1 
et seq
. (West 2002)), alleging that (1) his fully negotiated plea of guilty to criminal drug conspiracy (720 ILCS 570/405.1(a) (West 2000)) was involuntary; and (2) the trial court erred in summarily denying his 
pro se
 motion to withdraw his plea.  On the State's motion, the trial court dismissed the petition as untimely and lacking merit.  Defendant appeals, arguing that the petition was timely; that he has the right to an evidentiary hearing on his petition; and that his postconviction counsel did not provide him with the reasonable assistance that the Act requires (see 
People v. Lee
, 251 Ill. App. 3d 63, 64-65 (1993)).  We reverse and remand.

On November 22, 2000, defendant was indicted on one count each of criminal drug conspiracy, unlawful possession of a controlled substance with the intent to deliver (720 ILCS 570/401(a)(2)(B) (West 2000)), and unlawful possession of a controlled substance (720 ILCS 570/402(a)(2)(B) (West 2000)).  Because the second offense was a Class X felony, punishable by 12 to 50 years in prison, the conspiracy was also a Class X felony with the same sentencing range (see  see 720 ILCS 570/401(a), 405.1(c) (West 2000)). 

On January 24, 2001, after a Rule 402(d) conference (see 177 Ill. 2d R. 402(d)), defendant's attorney, Robert Ritacca, stated that the parties were "far apart" on a plea agreement.  Judge Starck and the attorneys continued the conference.  The judge then told defendant that the State was willing to recommend a 10-year prison sentence if defendant pleaded guilty to criminal drug conspiracy.  He added that Ritacca thought that defendant could "beat" the charge and had asked the State to recommend 8 years' imprisonment, but the State had refused.  Defendant said, "I will go to trial."

On January 31, 2001, the parties appeared before Judge Rossetti.  The judge recounted that defendant, the attorneys, and she had discussed a possible agreement under which defendant would plead guilty to Class X criminal drug conspiracy and the State would recommend a 10-year prison sentence.  Defendant told the court that he had discussed this proposal with Ritacca.  Judge Rossetti next explained that the State had reindicted defendant, reducing the charge of possession with intent to deliver and the conspiracy charge from "Super X" offenses to ordinary Class X offenses.  Defendant pleaded not guilty to the new charges.  

On February 2, 2001, the parties again appeared in court.  Ritacca told Judge Rossetti that, "at this particular time," defendant did not want to plead guilty.  The court continued the cause until February 5, 2001, for trial.  On February 5, 2001, the parties appeared before Judge Starck.  The following colloquy occurred: 

"MR. RITACCA: I had the opportunity to speak to Mr. Young concerning what was talked about in the 402 conference.  I told Mr. Young that based upon a plea *** the State could or would make this a Class 1, but the time would be increased, but with the increase of time regardless of that [
sic
] he would still be eligible for everything at the Department of Corrections, that being a period of work release and a period of less actual time that he would be serving.  Mr. Young has told me that that's not acceptable.  Is that correct, Carl?

 THE DEFENDANT: You told me ten years.

 MR. RITACCA: Judge, other than that--can we have some time?  Can I come back at 1:30?

 THE COURT: Sure."

After some proceedings off the record, Judge Starck admonished defendant in accordance with Supreme Court Rule 402(a) (177 Ill. 2d R. 402(a)).  Defendant stated that he had not been promised anything or threatened with anything other than what was in the plea agreement itself and that he had discussed the case with Ritacca.  After Judge Starck heard the factual basis for the plea, he asked defendant if he still wanted to plead guilty.  Defendant said yes.  Judge Starck accepted the plea and, per the agreement, sentenced defendant to 12 years' imprisonment.  The judge also admonished defendant about his appeal rights (see 188 Ill. 2d R. 605(c)).

On February 26, 2001, defendant, now in prison, filed a 
pro se
 "Motion to Withdraw Plea of Guilty" alleging in part that Ritacca had pressured him into pleading guilty.  On February 27, 2001, the trial court denied the motion.  There is nothing in the record to show that defendant was notified of the ruling.  He did not file a notice of appeal.  On April 10, 2001, still proceeding 
pro se
, he refiled his motion, which the trial court again denied.  During April, May, and
 August 2002, defendant filed several 
pro se
 motions that were either abandoned or denied.  

On October 7, 2002, defendant filed a 
pro se
 petition under the Act, alleging that, after he declined a plea agreement that would have resulted in a 10-year prison sentence, Ritacca induced him to enter into an agreement that resulted in a 12-year prison sentence.  According to defendant,
 he acceded to the agreement "[b]ased on the promise of being released from the Department of Corrections sooner."  The trial court appointed counsel, who filed an amended petition asserting that (1) the trial court denied defendant his right to counsel by refusing to provide him with an attorney after he filed his 
pro se
 motion to withdraw his guilty plea; and (2) Ritacca was ineffective in advising defendant "that it would be to [defendant's] advantage to plead guilty and accept a 12 year [
sic
] *** sentence on a reduced charge rather that [
sic
] a 10 year [
sic
] sentence on a Class X offense."  The amended petition attached no affidavits.

The State moved to dismiss the petition, arguing that it was barred by the two-year statute of limitations of section 2--1401 of the Code of Civil Procedure (735 ILCS 5/2--1401 (West 2002)) (see 735 ILCS 5/2--1401(c) (West 2002)) and that the record did not support its claims.  The trial court granted the motion, holding that the petition was time-barred; that it was "not supported adequately by affidavit"; and that it lacked merit.  Defendant timely appealed.   

Defendant contends that his petition was timely and that it presented substantial claims that (1) his guilty plea was induced by Ritacca's ineffectiveness and (2) he was denied the right to counsel after he moved 
pro se
 to withdraw his plea.  He also asserts that his postconviction counsel did not provide reasonable assistance because she acquiesced in the State's specious arguments.

Initially, we hold that the trial court erred in ruling that the petition was time-barred.  Inexplicably, the State and the court relied on the two-year limitations period for petitions brought under section 2--1401 of the Code of Civil Procedure (735 ILCS 5/2--1401 (West 2002)), even though defendant's petition was plainly filed under the Act.  Moreover, under either the Act's three-year time limit (see 725 ILCS 5/122--1(c) (West 2002)) or section 2--1401's two-year time limit (735 ILCS 5/2--1401(c) (West 2002)), the petition was timely, as it was filed October 7, 2002, and the underlying judgment was entered February 5, 2001.  Because the petition was not time-barred, we turn to whether the trial court correctly dismissed it on the merits.

A postconviction petitioner is entitled to an evidentiary hearing if the petition's allegations, supported by the trial record or affidavits where appropriate, make a substantial showing that the petitioner's constitutional rights were violated.  
People v. Simpson
, 204 Ill. 2d 536, 546-47 (2001).  In deciding whether the petitioner has done so, the trial court must accept all well-pleaded facts as true and decide whether the petition is legally sufficient.  
People v. Washington
, 348 Ill. App. 3d 231, 236 (2004).  Our review is 
de novo
.  
People v. Coleman
, 183 Ill. 2d 366, 388-89 (1998).

We consider first whether defendant's petition sufficiently alleged that his guilty plea was involuntary and the result of his counsel's ineffectiveness.  Defendant's petition claimed that he pleaded guilty to a Class 1 felony and accepted a 12-year prison sentence because Ritacca incorrectly told him that he could receive sentencing credits that he could not have received had he pleaded guilty to a Class X felony and accepted a 10-year sentence.  Defendant observes that, because "truth-in-sentencing" does not apply to criminal drug conspiracy, he would have received day-for-day good-conduct credit even had he pleaded guilty to the Class X offense (see 730 ILCS 5/3--6--3(a)(2), (2.1) (West 2000)).  Also, defendant notes, because he had already served two prison sentences for felonies, he could not obtain the work-release credit that Ritacca said was available.  See 730 ILCS 5/3--6--3(a)(4) (West 2000)).
(footnote: 1)
 The State responds in part that defendant has waived his argument by failing to appeal in the  underlying criminal case.  However, a claim that a guilty plea was involuntary may be raised for the first time in a postconviction petition.  
People v. Stroud
, 208 Ill. 2d 398, 403 (2004).  Moreover, the record does not show that the trial court ever notified defendant, who was in prison at the time, of its ruling on his 
pro se
 postjudgment motion.  Thus, the trial court may have been partly responsible for defendant's failure to file a timely appeal, and, out of fairness, we would disregard any waiver.

Due process requires that a guilty plea be voluntary and knowing.  
People v. Kidd
, 129 Ill. 2d 432, 443 (1989).  To establish that his trial counsel was ineffective, defendant must demonstrate that (1) counsel's performance was deficient; and (2) there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.  See 
People v. Pugh
, 157 Ill. 2d 1, 14-15 (1993).

Although defendant's postconviction petition is not as specific as it might be, we believe that  it sufficiently alleges that he pleaded guilty only because Ritacca misinformed him about how much actual time he would serve under the agreement.  The record makes clear that, before pleading guilty to a Class 1 felony and accepting a 12-year sentence, defendant repeatedly rejected offers to plead guilty to a Class X felony in exchange for a 10-year sentence.  After the first Rule 402(d) conference on January 24, 2001, defendant explicitly declined just such an offer.  A week later, defendant still insisted on pleading not guilty.  Two days after that hearing, defendant, by his counsel, again told the court that he did not want to plead guilty.  Even on the morning of February 5, 2001, defendant did not initially want to plead guilty.  When Ritacca explained that accepting the State's new offer meant that defendant's sentence "would be increased," defendant protested, "You told me ten years."  However, shortly afterward, defendant abruptly changed course and pleaded guilty to a Class 1 felony in return for a 12-year sentence.  

We recognize that defendant's postconviction petition does not attach affidavits explaining how the off-record proceedings changed his mind.  However, from the proceedings of record, the obvious inference to be drawn is that Ritacca told defendant that, by pleading guilty to a Class 1 charge, he could receive "a period of work release and a period of less actual time that he would be serving," 
i.e.
, that he could spend less actual time in prison than he would have spent had he accepted the State's earlier offers. This advice was objectively unreasonable.  In reality, defendant secured no greater opportunity for good-time credit than he would have if he had pleaded guilty to a Class X criminal drug conspiracy charge.  Either way, he was entitled to day-for day credit if he satisfied certain criteria.  See 730 ILCS 5/3--6--3(a)(2), (2.1) (West 2000).  Also, defendant's prior felony sentences disqualified him from receiving enhanced good-time credit for work-release.  See 730 ILCS 5/3--6--3(a)(4) (West 2000).

The State argues that Ritacca's erroneous advice cannot support a claim of ineffective assistance because it addressed a collateral matter.  The State relies on 
People v. Maury
, 287 Ill. App. 3d 77 (1997).  There, the trial court summarily dismissed a postconviction petition that alleged that the defendant pleaded guilty only because his counsel erroneously advised him that he would be eligible for programs that provided enhanced good-time credit.  
Maury
, 287 Ill. App. 3d at 80.  In affirming, 
Maury
 relied on 
People v. Menke
, 74 Ill. App. 3d 220, 222 (1979), and 
People v. Huante
, 143 Ill. 2d 61, 69 (1991).  The court noted that, under 
Menke
,
 the effect of early-release statutes on a defendant's actual prison time is a collateral consequence of a conviction.  
Maury
, 287 Ill. App. 3d at 82.  
Huante
 held that an attorney is not ineffective merely because he fails to inform the defendant of a collateral consequence of a conviction.  The 
Maury
 court concluded that, because the defendant alleged only that his counsel had misinformed him about a collateral consequence of pleading guilty, he had not raised a cognizable claim of  ineffective assistance.  The court recognized that the defendant had alleged that his counsel affirmatively misled him and not that counsel simply failed to inform him about the collateral consequence.  However, the court considered this distinction legally irrelevant.  
Maury
, 287 Ill. App. 3d at 82-83.

As defendant points out, 
Maury
 completely fails to consider 
People v. Correa
, 108 Ill. 2d 541 (1985), which draws a crucial distinction between "the passive conduct of counsel in failing to discuss with a defendant the collateral consequences of a guilty plea" and "unequivocal, erroneous, misleading representations" that counsel makes in response to a defendant's specific inquiries.  
Correa
, 108 Ill. 2d at 551-52.  
Correa
 involved the latter situation.  While the court refused to decide whether the defendant's counsel would have been ineffective had he "simply failed to advise the defendant of the collateral consequence" (
Correa
, 108 Ill. 2d at 550), it held that counsel's "unequivocal, erroneous, misleading representations" about the collateral consequences of the plea amounted to ineffective assistance that rendered the defendant's plea involuntary.  
Correa
, 108 Ill. 2d at 552.  In 
Huante
, the court addressed the issue that 
Correa
 had not resolved, holding that the defendant's counsel did not perform unreasonably in "failing to volunteer to his client advice concerning" a collateral consequence of pleading guilty.  
Huante
, 143 Ill. 2d at 71.  

Although 
Huante
 declined to extend 
Correa
's reach, it plainly did not overrule 
Correa
.  Thus, 
Maury
 is simply mistaken in holding that there is no legally meaningful distinction between counsel's passive failure to inform a defendant of the collateral consequences of a guilty plea and counsel's affirmative misrepresentation of those consequences.  As 
Maury
 is unsound, we decline to follow it.

Defendant's allegation that he pleaded guilty based on Ritacca's erroneous advice is legally sufficient under the Act.  Of course, whether defendant can actually prove his contention must be resolved at an evidentiary hearing.  Defendant is entitled to a hearing on his claim that his trial counsel was ineffective and that, as a result, his plea was not voluntary.

We now consider whether defendant also deserves an evidentiary hearing on the other claim raised in his postconviction petition: that he was denied due process when the trial court summarily denied his 
pro se
 postjudgment motion without inquiring into whether he was represented by counsel and, if he was not, whether he needed to have counsel appointed. We agree with defendant that he is entitled to an evidentiary hearing on this issue.

"A defendant is entitled to representation at every critical stage of any trial proceeding, and this right to counsel attaches when a defendant files a motion to withdraw his guilty plea."  
People v. Cabrales
, 325 Ill. App. 3d 1, 6 (2001).  Supreme Court Rule 604(d) safeguards this right to counsel.  The rule dictates that, upon being presented with a motion to withdraw a guilty plea, "[t]he trial court shall then determine whether the defendant is represented by counsel, and if the defendant is indigent and desires counsel, the trial court shall appoint counsel."  188 Ill. 2d R. 604(d).  Our supreme court has held that, when a 
pro se
 defendant moves to withdraw his guilty plea, these protections are automatically triggered and the trial court may not summarily deny the motion as frivolous.  
People v. Edwards
, 197 Ill. 2d 239, 256 (2001).  

The 
Edwards
 court relied partly on our opinion in 
People v. Griffin
, 305 Ill. App. 3d 326 (1999).  See 
Edwards
, 197 Ill. 2d at 256.  In 
Griffin
, we held that, when a defendant files a 
pro se 
Rule 604(d) motion, the trial court must ascertain whether the defendant desires counsel.  Only after completing this inquiry and, if need be, allowing the defendant to obtain counsel to assist in preparing a proper motion may the court proceed further.  
Griffin
, 305 Ill. App. 3d at 330.  We explained that the court may not simply presume that the defendant has waived his right to counsel; indeed, even if he did so earlier, the court must indulge in every reasonable presumption in favor of finding that he has revoked his waiver.   
Griffin
, 305 Ill. App. 3d at 330; see also 
People v. Barnes
, 291 Ill. App. 3d 545 (1997) (judgment reversed and cause remanded where trial court summarily denied 
pro se
 postjudgment motion); 
People v. Ledbetter
, 174 Ill. App. 3d 234 (1988) (same).

Here, the record shows that, by denying defendant's 
pro se
 motion summarily, the trial court implicitly presumed that defendant had waived his right to counsel.  This presumption was improper.  U
pon receiving defendant's 
pro se
 motion, the court should have determined whether defendant was represented by counsel and, if he was not, whether he was indigent and desired counsel.  Only after ensuring that defendant either had representation or did not desire any should the court have proceeded further.  Defendant's petition sufficiently alleges that the trial court violated his constitutional right to counsel by summarily denying his 
pro se
 postjudgment motion.

We reverse the judgment of the circuit court of Lake County dismissing defendant's postconviction petition, and we remand the cause for an evidentiary hearing.  Defendant's contention that his postconviction counsel did not provide him reasonable assistance is moot.

Reversed and remanded.

KAPALA and GILLERAN JOHNSON, JJ., concur.

FOOTNOTES
1:
1
To establish that he has served two prison sentences for felonies, defendant has attached information printed from the Illinois Department of Corrections' website.  The State argues that, because this information is not in the record on appeal, we may not consider it.  However, we may take judicial notice of
 information that the Department of Corrections has provided on its website.  See 
Ashley v. Pierson
, 339 Ill. App. 3d 733, 739-40 (2003); 
Denius v. Dunlap
, 330 F.3d 919, 926 (7th Cir. 2003); 
Ligon v. Doherty
, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002).