Filed 3/28/08          NO. 4-06-0828

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| BRIAN S. STEWART, | ) | No. 06CF476 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas J. Difanis, |
| | ) | Judge Presiding. |

_____

JUSTICE COOK delivered the opinion of the court:

In April 2006, defendant, Brian S. Stewart, pleaded guilty to aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(1) (West 2006)). Pursuant to a negotiated plea, defendant was sentenced to six years in prison. In July 2006, defendant then filed a pro se postconviction petition alleging that before he pleaded, guilty-plea counsel erroneously informed him regarding applicable portions of the truth-in-sentencing law (730 ILCS 5/3-6-3(a)(2)(iii), (a)(2)(iv) (West 2006)); trial counsel stated that defendant was eligible to acquire day-for-day good-conduct credit and might only have to serve 50% of his sentence while defendant was statutorily required to serve at least 85% of his sentence. The trial court appointed postconviction counsel, who submitted an amended petition. The State filed a motion to dismiss. After hearing on the petition and the State's motion, the court denied the petition. Defendant appeals. We reverse

and remand.

## I. BACKGROUND

On March 21, 2006, defendant was charged with aggravated discharge of a firearm for knowingly discharging a firearm into a building when he reasonably should have known that the building was occupied. Defendant was also charged with reckless discharge of a firearm (720 ILCS 5/24-1.5 (West 2006)) for endangering the safety of Ryan Head and Britta Parker by discharging a firearm and striking their residence with several bullets.

On April 20, 2006, defendant pleaded guilty to aggravated discharge of a firearm in exchange for a sentence of six years in prison and dismissal of the reckless-discharge-of-a-firearm charge.

On July 13, 2006, defendant filed a pro se postconviction petition alleging that when he pleaded guilty he thought he would be given day-for-day credit and might only have to serve 50% of his sentence. After the 30-day period allowed for filing to withdraw his plea, the Department of Corrections (DOC) informed defendant that he must serve at least 85% of his sentence. Attached to defendant's petition was a letter from his attorney addressed to defendant wherein the attorney stated he was not aware that defendant would have to serve 85% of his

sentence.  The letter stated that the attorney understood at the time of the plea that day-for-day applied because the trial court did not find any great bodily harm occurred.  Counsel was not aware that the statute had been amended and an automatic 85% rule applied to all aggravated-discharge-of-a-firearm offenses even absent a great-bodily-harm finding.

Based on the petition, the trial court appointed defendant new counsel to represent him during the postconviction proceedings.  On August 10, 2006, counsel filed an amended postconviction petition alleging defendant was not admonished that he was to serve 85% and the court did not find that the victim suffered great bodily harm.  The petition did not explicitly include a statement concerning the ineffectiveness of defendant's guilty-plea counsel for improperly advising defendant that he would serve 50% of his sentence.  Postconviction counsel did not file a Rule 651(c) (134 Ill. 2d R. 651(c)) certificate.

On September 21, 2006, the State filed a motion to dismiss the petition claiming that the petition did not contain the gist of a constitutional claim as the truth-in-sentencing law was a collateral consequence of the guilty plea, beyond the control of the trial court, and not a direct consequence of the guilty plea.

Also on September 21, 2006, the trial court held a hearing on the postconviction petition and the State's motion to

- 3 -

dismiss it.  At the hearing, defendant's counsel argued that (1) defendant and his guilty-plea attorney were under a mistaken belief that he only had to serve 50% of his sentence and (2) defendant accepted the plea under that mistaken belief.  The trial court acknowledged the letter from defendant's guilty-plea counsel.  The court then pointed to the section in the Unified Code of Corrections that states that a conviction for aggravated discharge of a firearm resulted in a sentence of 85% if the court entered a finding of great bodily harm to the victim and the next section that stated that a conviction for aggravated discharge of a firearm always results in a sentence of 85% (730 ILCS 5/3-6-3(a)(2)(iii), (a)(2)(iv) (West 2006)).  The court stated that "when admonishing a defendant to the potential penalties, it is not required that the defendant be told that it's 85 percent *** the court need only admonish the defendant as to the potential penalties."  The court acknowledged that the statute was confusing but found it was up to DOC to determine which section to apply.  The court denied defendant's petition.  This appeal followed.

## II. ANALYSIS

Defendant argues that his petition should be remanded to the trial court for a third-stage evidentiary hearing under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 through 122-8 (West 2006)).  According to defendant, he was denied his

- 4 -

right to a reasonable level of assistance during postconviction proceedings because his appointed counsel filed only a cursory, unsupported amended petition and failed to file a Rule 651(c) certificate. Also, defendant was entitled to an evidentiary hearing because the application of the truth-in-sentencing provision was a direct consequence of his guilty plea and the trial court should have admonished him concerning that provision before accepting his plea. Even if the application of the provision was a collateral consequence, guilty-plea counsel's erroneous advice made counsel ineffective and rendered defendant's plea involuntary. The State maintains that the court properly dismissed the petition because defendant did not demonstrate a constitutional violation to warrant an evidentiary hearing.

We agree that the trial court need not admonish defendant concerning a collateral consequence of his guilty plea. For the following reasons though, we hold that when defense counsel affirmatively misrepresents to the defendant the collateral consequences of his guilty plea and the defendant pleads guilty based on the affirmative misrepresentations, the defendant alleges a constitutional violation that warrants an evidentiary hearing under the Act.

Under the Act (725 ILCS 5/122-1 through 122-8 (West 2006)), the trial court follows a three-stage process to

determine whether a defendant suffered a substantial violation of constitutional rights at trial, and if so, what remedy is appropriate.  See People v. Edwards, 197 Ill. 2d 239, 243-44, 757 N.E.2d 442, 445 (2001).  In the first stage, the trial court determines, without input from the State, whether a petition is frivolous or patently without merit.  725 ILCS 5/122-2.1(a)(2) (2006 West).  If the petition states the gist of a claim, the court advances it to the second stage where counsel may be appointed for the petitioner, appointed counsel may file an amended petition, and the State may file responsive pleadings. 725 ILCS 5/122-2.1(a)(2), 122-4, 122-5 (West 2006); see also Edwards, 197 Ill. 2d at 245-46, 757 N.E.2d at 446.  In the second stage, the court determines whether defendant's petition and documentation "make a substantial showing of a constitutional violation."  Edwards, 197 Ill. 2d at 246, 757 N.E.2d at 446.  If defendant has made a substantial showing of a constitutional violation, the petition advances to the third stage, at which point the court holds an evidentiary hearing.  Edwards, 197 Ill. 2d at 246, 757 N.E.2d at 446, citing 725 ILCS 5/122-6 (West 1998).

In this case, defendant's petition was dismissed during the second stage without an evidentiary hearing.  We review such dismissals de novo.  People v. Coleman, 183 Ill. 2d 366, 388-89, 701 N.E.2d 1063, 1075 (1998).  "The question raised in an appeal

from an order dismissing a post[]conviction petition is whether the allegations in the petition, liberally construed and taken as true, are sufficient to invoke relief under the Act." Coleman, 183 Ill. 2d at 388, 701 N.E.2d at 1075. A petitioner is not entitled to an evidentiary hearing unless he has made a substantial showing, based on the record and supporting affidavits, that his constitutional rights were violated. People v. Erickson, 183 Ill. 2d 213, 222, 700 N.E.2d 1027, 1032 (1998).

Defendant claims his postconviction counsel was ineffective for failing to clearly assert that his guilty-plea counsel was ineffective when he gave defendant erroneous legal advice. Defendant then claims that despite postconviction counsel's ineffectiveness, the trial court should have advanced his petition to the third stage, an evidentiary hearing, to determine the exact nature of the legal advice given and the impact of that advice on defendant's decision to plead guilty. The underlying contention in both of these claims is that defendant's guilty plea was involuntary because his guilty-plea counsel was ineffective when he misinformed defendant as to the application of the truth-in-sentencing law; namely, whether he was eligible for day-for-day good-conduct credit or required to serve at least 85% of his sentence.

The State maintains that the misinformation did not render guilty-plea counsel ineffective or the plea involuntary

because the advice concerned a collateral consequence of defendant's sentence. Illinois courts have recognized that the impact of counsel's advice regarding a guilty plea may depend on whether the advice involved a direct consequence of the guilty plea or a collateral consequence. See People v. Frison, 365 Ill. App. 3d 932, 934, 851 N.E.2d 890, 892-93 (2006). "Direct consequences are those that are definite, immediate, and largely automatic in their effect upon a defendant's punishment." Frison, 365 Ill. App. 3d at 934, 851 N.E.2d at 893; see also People v. Blackburn, 46 Ill. App. 3d 213, 215, 360 N.E.2d 1159, 1160 (1977) (the mandatory parole term that attaches to a defendant's sentence is a direct consequence of a plea of guilty). Collateral consequences are things beyond the court's control and do not relate to the length of the sentence imposed. Frison, 365 Ill. App. 3d at 934, 851 N.E.2d at 893; see also People v. Williams, 188 Ill. 2d 365, 372, 721 N.E.2d 539, 544 (1999) (including as collateral consequences the following: "'"loss of public or private employment, effect on immigration status, voting rights, possible auto license suspension, possible dishonorable discharge from the military, or anything else"' (Emphasis added.) [Citation.]"); In re Detention of Lindsay, 333 Ill. App. 3d 474, 477, 776 N.E.2d 304, 306 (2002) (the possibility of commitment under the Sexually Violent Persons Commitment Act is a collateral consequence).

As defendant's claim relates to DOC's discretion in awarding defendant good-conduct credit, the advice concerned a collateral consequence of defendant's sentence. The misinformation did not affect the sentence imposed and DOC ultimately has discretion as to whether defendant will be awarded any credit. See Frison, 365 Ill. App. 3d at 934, 851 N.E.2d at 893 (ruling counsel's advice regarding good-conduct credit under the truth-in-sentencing law is a collateral consequence as the truth-in-sentencing law may affect the sentence defendant ultimately serves but does not affect the sentence imposed by the trial court and the law's application is not definite, immediate, or automatic).

Defendant argues, though, that even if the advice concerning the truth-in-sentencing law is considered a collateral consequence of his sentence, he should be allowed to withdraw his plea because his attorney did more than passively refuse to instruct him. Defendant claims his attorney actively misinformed him that he was eligible for more good-conduct credit than that for which he was statutorily eligible. Believing he might only have to serve three years, defendant claimed he decided to plead guilty. Defendant argues his claim should be advanced to the third stage to present evidence that he only pleaded guilty because of his attorney's explicit wrong advice and he would not have pleaded guilty had it not been for this bad information.

- 9 -

The Illinois Supreme Court, in People v. Correa, 108 Ill. 2d 541, 485 N.E.2d 307 (1985), held that defense counsel's incorrect advice on a collateral consequence of defendant's plea fell below the constitutionally required range of competence and rendered defendant's guilty plea involuntary.  Six years later the Illinois Supreme Court in People v. Huante, 143 Ill. 2d 61, 571 N.E.2d 736 (1991), held that counsel's failure to advise defendant of a collateral consequence of defendant's guilty plea did not fall below the constitutionally required range of competence and did not render defendant's guilty plea involuntary.  In Huante, the court acknowledged Correa and acknowledged that Huante raised a different question, "whether 'the passive conduct of counsel in failing to discuss with a defendant the collateral consequences of a guilty plea' constituted ineffective assistance of counsel."  Huante, 143 Ill. 2d at 68, 571 N.E.2d at 739-40,  quoting Correa, 108 Ill. 2d at 551, 485 N.E.2d at 311.  The court in Huante explicitly overruled some appellate court decisions that held defense counsel's failure to advise the defendant regarding collateral consequences amounted to ineffective assistance of counsel and rendered the guilty plea involuntary.  Huante, 143 Ill. 2d at 74, 571 N.E.2d at 742.  The court did not, however, state that it overruled Correa or any other case wherein defense counsel actively misinformed the defendant.

In 1997, the Illinois First District Appellate Court held in People v. Maury, 287 Ill. App. 3d 77, 678 N.E.2d 30 (1997), that defense counsel was not ineffective for allegedly giving defendant erroneous advice regarding early release. The Maury court cited Huante when it determined that the defense counsel's advice concerned a collateral consequence of the defendant's guilty plea. Maury, 287 Ill. App. 3d at 82, 678 N.E.2d at 33. The court also noted that unlike the defense counsel in Huante, who failed to advise an accused of a collateral consequence, the defense counsel in its case gave the accused erroneous advice. Maury, 287 Ill. App. 3d at 83, 678 N.E.2d at 34. The court determined that the distinction between failing to advise and actively giving wrong advice was irrelevant because either way the advice concerned a collateral consequence of the plea. Maury, 287 Ill. App. 3d at 83, 678 N.E.2d at 34. The court did not discuss Correa.

In 2005, the Second District of the Illinois Appellate Court in People v. Young, 355 Ill. App. 3d 317, 822 N.E.2d 920 (2005), pointed out the Maury court's failure to consider Correa, "which draws a crucial distinction between 'the passive conduct of counsel in failing to discuss with a defendant the collateral consequences of a guilty plea' and 'unequivocal, erroneous, misleading representations' that counsel makes in response to a defendant's specific inquiries." Young, 355 Ill. App. 3d at 323,

822 N.E.2d at 925, quoting Correa, 108 Ill. 2d at 551-52, 485 N.E.2d at 311. Because of its failure to address Correa, the Young court declined to follow Maury as it was "simply mistaken in holding that there is no legally meaningful distinction between counsel's passive failure to inform a defendant of the collateral consequences of a guilty plea and counsel's affirmative misrepresentation of those consequences." Young, 355 Ill. App. 3d at 323, 822 N.E.2d at 926. The Young court held that defendant's allegation that he pleaded guilty based on his guilty-plea counsel's erroneous advice was legally sufficient under the Act to entitle the defendant to an evidentiary hearing to determine whether the defendant could prove his contention that his counsel was ineffective and his plea was involuntary. Young, 355 Ill. App. 3d at 323-24, 822 N.E.2d at 926.

We agree with Young that the Illinois Supreme Court drew a distinction in Correa and Huante between failure to give advice and actively giving wrong advice regarding collateral consequences of a plea. In this case, defendant's pro se petition, the attached letter from guilty-plea counsel, the amended petition, and the arguments during the postconviction proceedings demonstrate that defendant alleges that (1) guilty-plea counsel gave him erroneous advice, (2) based on that erroneous advice he decided to plead guilty, and (3) he would not have pleaded guilty had it not been for the misinformation.

- 12 -

Defendant's contention that counsel gave him wrong advice and he relied on that advice is sufficient under the Act to entitle him to an evidentiary hearing--even though the advice involved a collateral consequence of his guilty plea.  Whether defendant can ultimately prove his contention will be resolved at the evidentiary hearing.  As we are remanding this case for an evidentiary hearing, we need not address defendant's claim of ineffective assistance of postconviction counsel.

                    III. CONCLUSION

     For the reasons stated, we reverse the trial court's judgment and remand for an evidentiary hearing.

     Reversed and remanded.

     McCULLOUGH and MYERSCOUGH, JJ., concur.