2024 IL App (1st) 231356-U

FOURTH DIVISION
Order filed: August 22, 2024

No. 1-23-1356

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | Nos. 08CR405501, |
| | ) | 08CR405604 |
| | ) | |
| JAMAL BRACEY, | ) | Honorable |
| | ) | Michael R. Clancy, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Rochford and Justice Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:   First-stage dismissal of the defendant's postconviction petition raising challenge to his sentence was proper when (1) petition failed to state viable eighth amendment or proportionate penalties clause claim and the defendant waived any challenge to his sentence by pleading guilty, and (2) circuit court did not err when it did not give admonitions set forth in *People v. Shellstrom*, 216 Ill. 2d 45 (2005), when circuit court evaluated petition as an initial postconviction petition, rather than a successive petition.

¶ 2    The defendant, Jamal Bracey, appeals from the first-stage dismissal of his "Motion for Leave to File Post-Conviction Petition," which the circuit court considered as the defendant's

initial post-conviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)). The circuit court dismissed the petition at the first stage as frivolous and patently without merit. We affirm.

¶ 3      The defendant was charged in 08CR405604 along with co-defendants Demetrius Warren, Eric Walker, and Benjamin Williams, with multiple felony counts including armed robbery and first-degree murder. See 720 ILCS 5/9-1(a) (West 2006). The charges stemmed from a string of robberies committed on November 18 and 19, 2007, culminating in the attempted robbery and shooting death of University of Chicago student Amadou Cisse. Warren was alleged to have shot Cisse, and the defendant was charged with first-degree murder based on an accountability theory.

¶ 4      The defendant was separately charged in 08CR405501 with residential burglary. See 720 ILCS 5/19-3(a) (West 2006). In that case, the defendant and Warren were alleged to have entered the residence of Dr. Sharon Lieteau on November 13, 2007, and stolen, among other items, two firearms, one of which was used in the string of robberies forming the basis for the charges in 08CR405604. The defendant was 17 at the time of both incidents.

¶ 5      On November 9, 2010, the defendant and the State agreed to a Supreme Court Rule 402 conference with the trial court regarding a possible plea agreement. See Ill. S. Ct. R. 402(d)(1) (eff. July 1, 2012). After the conference, the trial court recommended the minimum sentence of 4 years in the Illinois Department of Corrections on the residential burglary charge in 08CR405501 and a sentence of 35 years on the first-degree murder charge in 08CR405604. The sentences were to be served consecutively, for an aggregate sentence of 39 years.

¶ 6      The defendant accepted the recommendation and the trial court proceeded to a plea hearing. The defendant was admonished regarding his right to a jury trial and the applicable sentencing

ranges of 4 to 15 years for the residential burglary charge and 35 to 75 years for the first-degree murder charge, for an aggregate possible range of 39 to 90 years. The defendant was admonished as to his right to appeal and was told he needed to move to withdraw his plea within 30 days. The trial court found that the defendant knowingly waived his rights under the law, there was a factual basis for the plea, and the plea of guilty was entered. The trial court imposed the agreed-upon sentence of 4 years in 08CR405501 consecutive to 35 years in 08CR405604, with credit for time served. The remaining counts in 08CR405604 were nol-prossed with the plea of guilty on the murder count.

¶ 7    On March 6, 2012, the defendant filed a *pro se* motion to withdraw his guilty plea, alleging his counsel had told him he would receive a 30-year sentence. The circuit court denied the motion. The circuit court also denied the defendant's subsequent notice of appeal as untimely, admonishing the defendant to seek a late notice of appeal before this court, which the defendant ultimately did not do.

¶ 8    On January 20, 2023, the defendant filed a *pro se* "Motion for Leave to File Post-Conviction Petition," wherein he argued he was given a *de facto* life sentence that did not consider his youth under the eighth amendment of the United States Constitution and *Miller v. Alabama*, 567 U.S. 460 (2012). The defendant characterized his petition as "successive" and argued that he had established cause and prejudice because he was sentenced prior to *Miller* being decided.

¶ 9    On February 21, 2023, the circuit court entered a written order summarily dismissing the defendant's petition. The circuit court noted there was "no record of [the defendant] having filed an initial post-conviction petition" and considered the petition under the standard for a timely first-stage petition. See 725 ILCS 5/122-2.1(a)(2) (West 2022). The circuit court concluded that the

defendant's aggregate 39-year sentence was not a *de facto* life sentence under *People v. Buffer*, 2019 IL 122327, ¶ 41, and, therefore, the defendant's claim was frivolous and patently without merit. The defendant filed a late notice of appeal to this court, which we allowed, and this appeal follows.

¶ 10    The defendant raises two claims of error on appeal: (1) the circuit court erred in dismissing his post-conviction petition when he stated the gist of a constitutional claim that his aggregate 39-year sentence including a 15-year mandatory firearm enhancement imposed after a plea agreement violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. 1, § 11), and (2) the circuit court erred in failing to admonish him under *People v. Shellstrom*, 216 Ill. 2d 45 (2005), prior to characterizing his filing as an initial, rather than successive, postconviction petition. We find no error and affirm.

¶ 11    The Act allows a defendant to collaterally attack a conviction by asserting that it resulted from a "substantial denial" of his or her constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2022). A post-conviction petition is not an appeal from the conviction judgement, but rather a collateral attack on the trial court proceedings. *People v. Tate*, 2012 IL 112214 ¶ 8. When a petition is filed, within 90 days the trial court must either docket the petition or dismiss it as "frivolous or [] patently without merit" by written order. 725 ILCS 5/122-2.1(a)(2). The written order must specify the findings of fact and conclusions of law made in dismissing the petition. *Id.*

¶ 12    The circuit court dismissed the defendant's postconviction petition at the initial stage as frivolous and patently without merit. A petition is frivolous or patently without merit when it has no arguable basis in either fact or law. *People v. Hodges*, 234 Ill. 2d 1, 11-12 (2009). A petition has no arguable basis in law or fact when it is "based on an indisputably meritless legal theory or

a fanciful factual allegation." *Id.* at 16. We review *de novo* the summary dismissal of a defendant's postconviction petition. *People v. Allen*, 2015 IL 113135, ¶ 19.

¶ 13    The defendant's first argument is that the circuit court erred in dismissing his post-conviction petition at the first stage because he stated the gist of a constitutional claim. The defendant's *pro se* petition argued that he was given a *de facto* life sentence when he received an aggregate sentence of 39 years and was not given special consideration due to his age, in violation of the eighth amendment as interpreted by *Miller*. Before this court, the defendant raises a different argument, that his aggregate 39-year sentence violates the proportionate penalties clause when it included a mandatory 15-year firearm enhancement and involved no consideration of his age or the fact that he was charged under an accountability theory. We find that the defendant has not stated an arguable claim for the violation of his rights under either the eighth amendment or proportionate penalties clause, and regardless find that his plea of guilty waived any claim of error with regards to his sentence.

¶ 14    Illinois courts have expounded on what constitutes a life sentence for a juvenile under the eighth amendment in light of the Supreme Court's decision in *Miller v. Alabama*. In *People v. Buffer*, 2019 IL 122327, ¶¶ 37-41, our supreme court adopted a 40-year threshold for a *de facto* life sentence under the eighth amendment, holding that a sentence under 40 years offers a meaningful opportunity for release and is, therefore, not a *de facto* life sentence. The court held that to impose a sentence of over 40 years on a juvenile, an offender's youth and circumstances must be considered. *Id.* ¶¶ 36-37; see 730 ILCS 5/5-4.5-105(a) (West 2022) (listing factors to be considered). Our supreme court further clarified in *People v. Dorsey*, 2021 IL 123010, ¶ 65, that

the relevant consideration is whether the defendant could obtain release prior to 40 years including sentencing credits, even if the nominal sentence is longer than 40 years.

¶ 15    In light of this standard, the defendant's original argument in his *pro se* petition, that he was given a *de facto* life sentence in violation of the eighth amendment, was properly rejected by the circuit court as meritless. The defendant received an aggregate 39-year sentence for two separate pleas of guilty. The defendant's anticipated release date is June 1, 2043, which would result in a total of 35 years and four months in custody from his arrest date of January 23, 2008. See *People v. Young*, 355 Ill. App. 3d 317, 321 n.1 (2005) (noting that this court may take judicial notice of information on the Illinois Department of Corrections website). The defendant's sentence is below the 40-year threshold for a *de facto* life sentence adopted by *People v. Buffer*, 2019 IL 122327, ¶¶ 37-41. After *Buffer*, an eighth amendment claim alleging a juvenile was given a *de facto* life sentence where the individual can obtain release within 40 years is without merit, and, therefore, the circuit court correctly dismissed the defendant's petition. See *People v. Thompson*, 2022 IL App (1st) 200463, ¶ 38 (affirming first-stage dismissal of postconviction petition based on eighth amendment claim challenging 80-year sentence under *Miller* when the defendant could obtain release after 40 years with day-for-day sentencing credit).

¶ 16    On appeal, the defendant re-frames his challenge under the proportionate penalties clause, specifically arguing the imposition of the 15-year firearm enhancement violates the proportionate penalties clause as-applied to him. The proportionate penalties clause of the Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. 1, § 11. A sentence violates the clause if it is "cruel, degrading, or so disproportionate to the offense as to

shock the moral sense of the community." *People v. Leon Miller*, 202 Ill. 2d 328, 338 (2002). Our supreme court has declined to define what constitutes a cruel or degrading sentence, because "as our society evolves, so too do our concepts of elemental decency and fairness which shape the 'moral sense' of the community." *Id.* at 339. Even setting aside whether this claim was properly presented to the circuit court in the defendant's petition, we find it lacks merit.

¶ 17 Our supreme court has recently addressed the issue of as-applied challenges to mandatory firearm enhancements under the proportionate penalties clause in *People v. Hilliard*, 2023 IL 128186. In *Hilliard*, the defendant, who was 18 at the time of the crime, was convicted of attempted murder and sentenced to 40 years in prison including a 25-year firearm enhancement. *Id.* ¶ 9. The defendant filed a postconviction petition challenging his sentence under the eighth amendment and proportionate penalties clause, which was dismissed at the first stage. *Id.* ¶¶ 11, 13. Our supreme court found that based on the facts of the case, when the defendant was alleged to have shot an individual multiple times at close range, a 40-year sentence was "not even arguably 'cruel, degrading, or so wholly disproportionate to the offense as to shock the community,' " and found that the circuit court did not err in dismissing the petition. *Id.* ¶ 40.

¶ 18 We find that the defendant's 35-year sentence on a first-degree murder charge served consecutively with a 4-year sentence on a residential burglary charge, imposed as the result of a plea agreement with the dismissal of other charges, does not "shock the community" such that he has a viable claim under the proportionate penalties clause. The defendant was charged with first-degree murder on an accountability theory based on his involvement in a string of armed robberies, resulting in the murder of Cisse. The defendant was alleged to have been personally responsible for the residential burglary and the armed robbery of two University of Chicago students

immediately preceding the murder of Cisse. On those facts, even considering the defendant's youth at the time of the crime, we cannot find that the agreed-upon sentence even arguably violates the proportionate penalties clause. See *People v. Streeter*, 2024 IL App (1st) 191825-UB, ¶ 85 (affirming first-stage postconviction dismissal of proportionate penalties clause challenge to sentence when 18-year-old defendant received 40-year sentence for first-degree murder based on accountability theory without firearm enhancement).

¶ 19    The defendant cites to *People v. Aikens*, 2016 IL App (1st) 133578, *People v. Barnes*, 2018 IL App (5th) 140378, and *People v. Womack*, 2020 IL App (3d) 170208, to support his argument that the imposition of the 15-year firearm enhancement violates the proportionate penalties clause as applied to him. In *Aikens*, 2016 IL App (1st) 133578, ¶¶ 1, 37-38, the court found that the imposition of a 20-year firearm enhancement for a juvenile convicted of the attempted murder of a peace officer, resulting in a 40-year sentence, violated the proportionate penalties clause. In *Barnes*, 2018 IL App (5th) 140378, ¶¶ 3-4, 25-26, the court found that the imposition of a 15-year firearm enhancement for a juvenile convicted of armed robbery, resulting in a 22-year sentence, violated the proportionate penalties clause. In *Womack*, 2020 IL App (3rd) 170208, ¶¶ 1, 17, a divided court found that the imposition of a 20-year firearm enhancement for a juvenile convicted of attempted murder, resulting in a 38-year sentence, violated the proportionate penalties clause.

¶ 20    We find all three cases to be distinguishable. All three cases pre-date *Hilliard*, none of them involved a guilty plea where the sentence was agreed to in exchange for the dismissal of other charges, and none of them involve first-degree murder charges. Based on the facts of this case and the fact that the defendant's sentence resulted from a plea agreement, we do not find that the defendant's aggregate 39-year sentence or the imposition of the 15-year firearm enhancement

shocks the moral conscience of the community. See *People v. Woods*, 2020 IL App (1st) 163031, ¶ 63 (distinguishing *Aikens* and *Barnes* in finding that 33-year sentence for attempted murder with mandatory 25-year firearm enhancement for the defendant who was 17 years old at time of the incident did not violate proportionate penalties clause).

¶ 21    The defendant argues that changes in the legislative scheme making firearm enhancements discretionary for juveniles shows an evolving sense of morals against the imposition of mandatory firearm enhancements on juveniles. See 730 ILCS 5/5-4.5-105(c)(2) (West 2022). However, the legislature declined to make any of those provisions retroactive, and the fact that firearm enhancements may still be imposed suggests that the legislature did not find the imposition of those enhancements on juvenile offenders to shock our sense of moral decency. See *Hilliard*, 2023 IL 128186, ¶ 38 (rejecting similar argument for 18-year-old defendant); *Woods*, 2020 IL App (1st) 163031, ¶ 62 (rejecting argument for 17-year-old defendant).

¶ 22    Regardless of whether the defendant raised the gist of a constitutional claim in his petition, we also find that his guilty plea waived any claim of error with regards to his sentence. "By entering a plea agreement, a defendant forecloses any claim of error. It is well established that a voluntary guilty plea waives all non-jurisdictional errors or irregularities, *including constitutional ones*." (Emphasis in original and internal quotation marks omitted.) *People v. Jones*, 2021 IL 126432, ¶ 20 (quoting *People v. Sophanavong*, 2020 IL 124337, ¶ 33).

¶ 23    In *Jones*, a juvenile defendant charged with two counts of murder entered a negotiated plea to a 50-year sentence for first-degree murder, along with a concurrent 30-year sentence for armed robbery and a 15-year sentence for residential burglary. *Jones*, 2021 IL 126432, ¶ 4. In a successive post-conviction petition, the defendant argued his sentence was unconstitutional under *Miller* as

the mandatory life sentencing scheme in place at the time of his plea was void as applied to juvenile offenders. *Id.* ¶ 7. The court in *Jones* affirmed the dismissal of the petition, holding that the defendant waived any claim under *Miller* when the defendant plead guilty and was not subjected to the mandatory sentencing scheme he challenged, as he entered into a negotiated plea agreement and the trial court had discretion as to whether to accept the negotiated sentence. *Id.* ¶¶ 17-27.

¶ 24     The defendant argues that his case is distinguishable from *Jones*, as the defendant in that case was not subject to the mandatory life sentencing scheme, while he was subjected to the mandatory firearm enhancement. *See id.*, ¶¶ 17-18. The defendant claims the negotiated guilty plea was not the issue, but rather that the *Jones* defendant was not subjected to the mandatory life sentencing scheme he was challenging. He cites to *People v. Schultz*, 2022 IL App (1st) 200919-U, ¶¶ 29-30, an unpublished decision of a different division of this court which found that, under *Jones*, a guilty plea did not preclude an as-applied challenge of a mandatory sentencing scheme.

¶ 25     We are not bound by *Schultz*, and find that under *Jones*, the defendant has waived any challenge to his sentence by pleading guilty. The defendant pled guilty to the first-degree murder charge in exchange for the State dismissing all other counts, including the armed robbery counts. The defendant received a minimum sentence on the first-degree murder count of 35 years including the 15-year firearm enhancement. Even granting that the agreed sentence included the 15-year enhancement, the trial court had discretion as to whether to accept the plea agreement and proposed sentence, which is especially evident when the trial court participated in plea discussions under Rule 402(d)(1). We find that the defendant has waived any challenge to his sentence by pleading guilty and accepting the minimum sentence for the first-degree murder charge including the 15-year enhancement and securing the dismissal of other charges. See *People v. Aceituno*, 2022 IL

App (1st) 172116, ¶¶ 57-58 (holding that, under *Jones*, blind guilty plea waived challenge to 48-year sentence under *Miller* or proportionate penalties clause).

¶ 26    The defendant's second argument on appeal is that the circuit court erred by failing to admonish him under *People v. Shellstrom*, 216 Ill. 2d 45 (2005), when it evaluated his putative "Motion for Leave to File Post-Conviction Petition" as an initial post-conviction petition. We find no error, as the circuit court did not re-characterize the defendant's filing to a different legal action that would have required admonishments under *Shellstrom*.

¶ 27    In *Shellstrom*, the defendant filed a *pro se* "Motion to Reduce Sentence, Alternatively, Petition for Writ of Mandamus to Order Strict Compliance with Terms of Guilty Plea." *Id.* at 48. The circuit court interpreted the filing as a post-conviction petition and dismissed it as being without merit. *Id.* at 49. On appeal the defendant argued that the pleading should have been interpreted as a *mandamus* complaint rather than a post-conviction petition. *Id.* at 50. Our supreme court held that the re-characterization of the defendant's filing as a post-conviction petition was proper, but held that the circuit court must make three admonishments to a *pro se* litigant before doing so, including "(1) notify the *pro se* litigant that the court intends to recharacterize the pleading, (2) warn the litigant that this recharacterization means that any subsequent postconviction petition will be subject to the restrictions on successive post-conviction petitions, and (3) provide the litigant an opportunity to withdraw the pleading or to amend it so that it contains all claims appropriate to a postconviction petition that the litigant believes he or she has." *Id.* at 57.

¶ 28    We agree with the State that the circuit court did not recharacterize the defendant's petition when it construed the defendant's "Motion for Leave to File Post-Conviction Petition" as an initial

post-conviction petition. The defendant's filing was labelled as a postconviction petition, but the arguments raised in the filing suggest he thought it was a successive petition or otherwise subject to the "cause and prejudice" standard. Regardless of what legal standard the defendant thought applied to his filing, the circuit court did not recharacterize the filing when it noted that the defendant had not previously filed a postconviction petition and it accordingly evaluated it as an initial postconviction petition. The circuit court did not "recharacterize[e] as a first postconviction petition a pleading that a *pro se* litigant has labelled as a different action cognizable under Illinois law," but rather evaluated a filing clearly labelled as a postconviction petition. *Shellstrom*, 216 Ill. 2d at 57. The circuit court's evaluation of the defendant's filing as an initial postconviction petition without any consideration of its timeliness worked in his favor, as it lowered the threshold showing he was required to make. See 725 ILCS 5/122-1(c) (West 2022) ("If a defendant does not file a direct appeal, the post-conviction petition shall be filed no later than 3 years from the date of conviction, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence."). Therefore, the circuit court was not required to admonish the defendant before evaluating his petition under the standard for an initial postconviction petition.

¶ 29    The defendant argues that his filing was a different action under Illinois law as it was labelled as a "Motion for Leave" rather than as a postconviction petition. This argument strains the holding of *Shellstrom* to suggest that because the defendant asked for leave to file a post-conviction petition, rather than simply filing a post-conviction petition, the *pro se* filing constitutes a "different action cognizable under Illinois law" and therefore required admonishments. *Shellstrom*, 216 Ill. 2d at 57. We disagree. The defendant was not required to separately move for leave to file a postconviction petition. See *People v. Tidwell*, 236 Ill.2d 150, 161 (2010) (holding

that separate motion for leave or request for leave is not required to file successive petition under 725 ILCS 5/122-1(f) (West 2006)). The defendant's filing was cognizable as a postconviction petition and was labelled as such, even if he erroneously believed he needed leave to file the petition. The defendant clearly intended to file a postconviction petition, rather than a different legal action. The filing contained a statement of the defendant's legal claim he wished to raise and stated that he wished to raise it in a postconviction petition. The circuit court did not err by interpreting the filing as an initial postconviction petition and evaluating it accordingly and was not required to admonish the defendant under *Shellstrom* before doing so.

¶ 30    The defendant argues the admonishments were necessary as he may have additional claims that he could have raised in an initial petition that will now be barred or subject to the standard for successive petitions. The defendant points to his subsequent filing in the circuit court appearing to raise additional claims about his interrogation without a parent present, and points to his co-defendant's postconviction petition which was before this court in *People v. Warren*, 2024 IL App (1st) 211549-U, to suggest that he may have additional claims that he could have raised that would be waived if he was not able to include them in an initial postconviction petition. See 725 ILCS 5/122-3 (West 2022). However, the defendant only raised a single claim of a *de facto* life sentence based on *Miller* in his petition, and we decline to speculate on other claims he could have raised, as he did not actually raise any of them in his petition. The defendant's filing was labelled as a postconviction petition and it was evaluated as a postconviction petition, so the circuit court did not err when it did not give him the admonitions set forth in *Shellstrom*.

¶ 31    For the foregoing reasons, the circuit court's order dismissing the defendant's "Motion for Leave to File Post-Conviction Petition" is affirmed.

¶ 32    Affirmed.