Rule 23 order filed
April 10, 2007;
Motion to publish granted
June 4, 2007.

NO. 5-05-0451

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| VICENTE RODRIGUEZ, Inmate No. N70616, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Alexander County. |
| | ) | |
| v. | ) | No. 04-MR-11 |
| | ) | |
| ILLINOIS PRISONER REVIEW BOARD, | ) | Honorable |
| | ) | Stephen L. Spomer, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE DONOVAN delivered the opinion of the court:

In February 2004, plaintiff, Vicente Rodriguez, inmate No. N70616 in the Illinois Department of Corrections (Department), filed a *pro se* complaint seeking *mandamus* and *certiorari* relief against defendant, the Illinois Prisoner Review Board (Board). He alleged that when the Board approved the revocation of his good-conduct credits, he was deprived of the procedural due process to which he was entitled. In March 2005, the Board filed a motion to dismiss, which the circuit court granted. On appeal, plaintiff argues that the circuit court erred in dismissing his complaint for *mandamus* relief on the Board's motion and that it erroneously denied his motion for a default judgment. Plaintiff seeks the vacation of the trial court's order dismissing his complaint and a remand of the cause for further proceedings.

The caption of the case has been amended by the court to include plaintiff's Department identification number.

BACKGROUND

Plaintiff is an inmate at Tamms Correctional Center (Tamms), one of the state's maximum-security facilities. Department records, of which we may take judicial notice (see

1

*People v. Young*, 355 Ill. App. 3d 317, 321 n.1, 822 N.E.2d 920, 924 n.1 (2005) (the court may take judicial notice of information that the Department has provided on its Web site)), disclose that he is serving a prison sentence of 40 years for murder on a 1986 Cook County conviction (see *People v. Rodriguez*, 192 Ill. App. 3d 1105, 577 N.E.2d 201 (1989) (unpublished order pursuant to Supreme Court Rule 23 (134 Ill. 2d R. 23)), as well as sentences of five years on a 1991 Livingston County conviction for being a felon in possession of a weapon in prison, two years on a 1993 Will County weapons conviction, and three years on a 1996 Will County conviction for aggravated battery. These latter sentences appear to have been ordered by the court to be served consecutively to the 1986 sentence. Plaintiff's projected parole date is November 16, 2015. The record on appeal reveals the following information.

On February 26, 2004, plaintiff filed a *pro se* complaint seeking *mandamus* relief and a common law writ of *certiorari* naming the Board as defendant. Plaintiff asserted that the Board had revoked good-conduct credits without affording him the procedural due process to which he was entitled under *Wolff v. McDonnell*, 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974), Illinois statutory law, the Illinois Administrative Code, and the United States Constitution. He contended that under section 3-3-2(a)(4) of the Unified Code of Corrections (730 ILCS 5/3-3-2(a)(4) (West 2004)) he was entitled to 24 hours' advance notice of a Board hearing at which it would consider the recommendation of the Director of Corrections (Director) that he lose good-conduct credit, the opportunity to call witnesses and present documentary evidence on his own behalf, and a summary statement from the Board in which it set forth the evidence upon which it relied in reaching its decision and the reasons for the disciplinary action that was taken. He sought a court order finding that the Board had abrogated his right to due process through its failure to provide a hearing that comported with *Wolff*. He also demanded the issuance of an order of *mandamus* to compel the Board to

2

provide hearings that conformed with procedural due process as required by *Wolff*, the issuance of a writ of common law *certiorari* "quashing" the revocation of his good-conduct credit, and reimbursement for costs incurred in his pursuit of the litigation. Plaintiff appended as "exhibit A" what appeared to be a conformed copy of a written request that he allegedly made to the Tamms records office for records of revoked good-conduct credit. Although the back of the conformed copy listed the alleged dates and prisons at which good-conduct credit had been revoked between 1991 and 1996 and the dates upon which some good-conduct credits had been restored at Tamms, he failed to attach to his petition any disciplinary reports, adjustment committee summaries, grievances, appeals, or final Board orders. It was thus impossible to ascertain with confidence when and for what plaintiff had been disciplined by the Department and if or when the Board had actually approved the recommended disciplinary action against plaintiff. On February 26, 2004, the Alexander County circuit clerk corresponded with plaintiff and instructed him to complete a summons form and return it for service.

On March 8, 2005, more than a year later, plaintiff moved in the circuit court for a default judgment against the Board because the Board had not yet responded to his February 2004 complaint. The record substantiates that a summons did not actually issue for the Board until January 18, 2005, and that the Board was not served with process until January 26, 2005. A return of summons was filed with the court on February 1, 2005.

On March 21, 2005, the Board filed a response to the motion for a default judgment. The response was supported by an affidavit from the Board's counsel, a motion for leave to file *instanter* a motion to dismiss plaintiff's complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2004)), and the motion to dismiss itself. The Board's motion to dismiss alleged that the Board had not actually been served with summons until January 26, 2005, and that its counsel, the Office of the Attorney General, first learned

3

of the complaint when it received plaintiff's March 8, 2005, motion for a default judgment and conferred with the Board. The Board argued that plaintiff's complaint was inadequate to state a cause of action for *mandamus* relief. Citing *Lucas v. Taylor*, 349 Ill. App. 3d 995, 812 N.E.2d 72 (2004), it argued that plaintiff was not entitled to the due process protections described in *Wolff* in actions taken by the Board and that thus the Board had not breached a nondiscretionary ministerial duty, warranting the dismissal of plaintiff's complaint for *mandamus* and *certiorari* relief. On March 21, 2005, the trial court granted the Board's motion for leave to file its motion to dismiss *instanter*.

On April 26, 2005, plaintiff filed a response to the Board's pleadings. He asserted that *Lucas* was not dispositive of the issues raised because *Lucas* was wrongly decided and it had misquoted and misinterpreted the Illinois Administrative Code and the Unified Code of Corrections. On May 18, 2005, the court issued a comprehensive order in which it granted the Board's motion to dismiss. It found that plaintiff had been granted the due process required by *Wolff* in the adjustment committee proceedings that resulted in his loss of good-conduct credit, that under the *Lucas* decision he was not entitled to a second hearing that comported with *Wolff* prior to the Board's approval of the recommended loss of credit, and that his complaint did not state a cause of action. The order did not address plaintiff's motion for a default judgment. On June 17, 2005, plaintiff filed a notice of appeal without first seeking a disposition by the court of his motion for a default judgment.

CONTENTIONS ON APPEAL

On appeal, plaintiff contends that he was entitled to a default judgment against the Board due to its failure to file a timely response to his complaint. He also argues that the court misinterpreted statutory and case law when it granted the Board's motion to dismiss his complaint for *mandamus* relief because he was absolutely entitled to a hearing that provided him with full procedural due process under *Wolff* when the Board considered the Director's

4

request for the ratification of the revocation of his good-conduct credit. He seeks the vacation of the trial court's order dismissing his complaint and a remand for further proceedings.

## DISCUSSION

### I. Motion for Default Judgment

Plaintiff admits that his motion for a default judgment was not ruled upon by the court prior to the date that he filed his notice of appeal. A litigant's failure to obtain a ruling on a motion does not translate into a denial of the motion by the court. *Hadley v. Ryan*, 345 Ill. App. 3d 297, 303, 803 N.E.2d 48, 54 (2003). Moreover, it is the responsibility of the party filing a motion to request the trial judge to rule on it, and when no ruling has been made on a motion, the motion is presumed to have been abandoned absent circumstances indicating otherwise. *Commerce Trust Co. v. Air 1st Aviation Cos.*, 366 Ill. App. 3d 135, 142, 851 N.E.2d 131, 137 (2006); *Herricane Graphics, Inc. v. Blinderman Construction Co.*, 354 Ill. App. 3d 151, 158-59, 820 N.E.2d 619, 626 (2004). A subsequently filed notice of appeal following the failure by a litigant to obtain a ruling on a motion serves as an abandonment of the previously filed motion. See *Jackson v. Alverez*, 358 Ill. App. 3d 555, 563-64, 831 N.E.2d 1159, 1166 (2005) (the party was deemed to have abandoned a motion for leave to amend her complaint by filing a notice of appeal without first ensuring that the trial court had ruled on the motion for leave to amend). Plaintiff's failure to obtain a ruling from the trial court on his motion for a default judgment prior to filing his notice of appeal resulted in his abandonment of the motion and created a procedural default of any issue related to that motion for the purpose of appeal. We thus need not address this issue on appeal.

### II. Propriety of Grant of Motion to Dismiss

The grant of a motion to dismiss for a failure to state a cause of action filed pursuant to section 2-615 or a motion for an involuntary dismissal based on defects or defenses in the

pleadings pursuant 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2004)) is subject to *de novo* review. *White v. DaimlerChrysler Corp.*, 368 Ill. App. 3d 278, 282, 856 N.E.2d 542, 546 (2006). Where the dismissal was proper as a matter of law, we may affirm the circuit court's decision on any basis appearing in the record. *MKL Pre-Press Electronics/MKL Computer Media Supplies, Inc. v. La Crosse Litho Supply, LLC*, 361 Ill. App. 3d 872, 877, 840 N.E.2d 687, 691 (2005).

A. *Mandamus* Complaint

*Mandamus* is an extraordinary civil remedy that will be granted to enforce, as a matter of right, the performance of official nondiscretionary duties by a public officer. *Lee v. Findley*, 359 Ill. App. 3d 1130, 1133, 835 N.E.2d 985, 987 (2005). A *mandamus* action is not an appropriate means for seeking judicial review of an administrative proceeding. *Newsome v. Illinois Prison Review Board*, 333 Ill. App. 3d 917, 920, 776 N.E.2d 325, 327 (2002). *Mandamus* will issue only where the plaintiff has fulfilled his burden (see *Mason v. Snyder*, 332 Ill. App. 3d 834, 840, 774 N.E.2d 457, 461 (2002)) to set forth *every* material fact needed to demonstrate that (1) he has a clear right to the relief requested, (2) there is a clear duty on the part of the defendant to act, and (3) clear authority exists in the defendant to comply with an order granting *mandamus* relief. *Baldacchino v. Thompson*, 289 Ill. App. 3d 104, 109, 682 N.E.2d 182, 186 (1997). A "material fact" is one that "is significant or essential to the issue or the matter at hand." Black's Law Dictionary 611 (7th ed. 1999). Because Illinois is a fact-pleading jurisdiction, a plaintiff is required to set forth a legally recognized claim and plead facts in support of each element that bring the claim within the cause of action alleged. *Beahringer v. Page*, 204 Ill. 2d 363, 369, 789 N.E.2d 1216, 1221 (2003). To survive a motion to dismiss for the failure to state a cause of action, a complaint must be both legally and factually sufficient. A liberal construction of pleadings will not allow a litigant to resort to notice pleading, and conclusions of fact will not suffice to state

6

a cause of action regardless of whether they generally inform the defendant of the nature of the claim against him. *Turner-El v. West*, 349 Ill. App. 3d 475, 485, 811 N.E.2d 728, 737 (2004); *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 167, 788 N.E.2d 740, 750 (2003). The court will not fill in all the blanks in a *pro se* complaint. *Turner-El*, 349 Ill. App. 3d at 479, 811 N.E.2d at 733. We review *de novo* the granting of a motion to dismiss a petition for *mandamus*. *Howell v. Snyder*, 326 Ill. App. 3d 450, 453, 760 N.E.2d 1009, 1011 (2001).

## B. Sufficiency of Complaint

Initially, we observe that plaintiff did not assert below, nor does he contend on appeal, that the disciplinary proceedings that preceded the Director's referral of the revocation of his good-conduct credits to the Board for review deprived him of the procedural due process to which he was entitled under *Wolff v. McDonnell*, 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974), sections 3-8-7(e)(1) through (e)(5) of the Unified Code of Corrections (730 ILCS 5/3-8-7(e)(1) through (e)(5) (West 2004)), or sections 504.80(b), (d), (f), (h), and (l) of the Illinois Administrative Code (20 Ill. Adm. Code §§504.80(b), (d), (f), (h), (l) (Conway Greene CD-ROM May 2006)). He fails to claim that he lacked notice of and the opportunity to defend against a disciplinary charge on the institutional level or that the adjustment committee, the chief administrative officer, the Director, or the administrative review board somehow abrogated his right to procedural due process. This leads to the conclusion that he tacitly admits that his liberty interest in his good-conduct credit (see *Wolff*, 418 U.S. at 557-58, 41 L. Ed. 2d at 952, 94 S. Ct. at 2975) was protected up to and including the point at which the Director sent the proposed revocation of his good-conduct credit to the Board for approval.

Rather, plaintiff claims that he was again entitled to complete procedural due process as described by *Wolff* when the Board reviewed the revocation of his good-conduct credit as

the final step in the revocation process: 24 hours' notice prior to the Board hearing, the chance to appear in person and defend against the charge, the opportunity to call witnesses and present documentary evidence on his behalf, and the right to receive a summary of the Board's findings and the evidence upon which it relied in reaching its conclusion. *Wolff*, 418 U.S. at 564-66, 41 L. Ed. 2d at 956, 94 S. Ct. at 2979. Plaintiff contends that the legislature's grant of power to the Board by statute leads to the conclusion that the Board is a fact-finding body that is empowered to "hold[] hearings and decide[] whether the Department[']s allegations are true," not merely a reviewing body. He also claims that *Lucas* was erroneously decided due to an underlying misapprehension of the law by the appellate court.

The disciplinary process set out in statutory and administrative regulations, which carry the force of law (see *Hadley v. Department of Corrections*, 362 Ill. App. 3d 680, 688, 840 N.E.2d 748, 756 (2005)), ensures that inmates who are subjected to disciplinary actions are provided procedural due process in adjustment committee hearings in compliance with *Wolff* (see 730 ILCS 5/3-8-7 (West 2004); 20 Ill. Adm. Code §504.80 (Conway Greene CD-ROM May 2006)). Although the Unified Code of Corrections and the Illinois Administrative Code expressly set out the procedural aspects of parole hearings before the Board where the Board acts as a fact finder, they do not set out the procedure by which the Board reviews requests from the Director for the ratification of the revocation of good-conduct credit.

The Illinois Supreme Court discussed in *People v. McClure*, 218 Ill. 2d 375, 843 N.E.2d 308 (2006), the methods by which legislative intent may be discerned:

> "The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. [Citation.] The best evidence of legislative intent is the language of the statute. [Citation.] When possible, the court should interpret the language of a statute according to its plain and ordinary meaning. [Citation.] If intent can be determined from the plain language of the statute, there is no need to resort to

8

interpretive aids. [Citation.] Courts are to construe the statute as a whole, so that no part of it is rendered meaningless or superfluous. [Citation.] A court should not depart from the language of the statute by reading into it exceptions, limitations, or conditions that conflict with the intent of the legislature." *McClure*, 218 Ill. 2d at 381-82, 843 N.E.2d at 312.

The legislature statutorily established the Board as an entity that is independent of the Department and, *inter alia*, serves as "*the board of review* for cases involving the revocation of good[-]conduct credits or a suspension or reduction in the rate of accumulating such credit." (Emphasis added.) 730 ILCS 5/3-3-1(a)(2) (West 2004). The plain words of the statute mandate that the Board serves as a board of review, not a fact finder, when it considers the Director's request for a ratification of disciplinary actions. This conclusion has been reinforced by case law. In *In re M.S.*, 239 Ill. App. 3d 938, 606 N.E.2d 768 (1992), the court underscored the fact that the adjustment committee that hears disciplinary infractions at the facility level "*acts as a fact-finding body* and also provides recommendations on how much good time an inmate should lose" (emphasis added) and that following the Director's approval of a recommendation for the loss of more than one month of credit at a time or more than 30 days' credit in a given calendar year, "[a]ny greater loss of good time must be submitted to the Prisoner Review Board *for its review* and final determination" (emphasis added). *In re M.S.*, 239 Ill. App. 3d at 941, 606 N.E.2d at 770. In *Lucas*, the court concluded: "Based on the overall framework of the applicable statutes and regulations, the adjustment committee is the body designated to hear and decide inmate disciplinary reports and provide inmates with due process if good-conduct credits are revoked. *** On the other hand, the [Board's] role is *not one of a fact finder* but as the '*board of review* for cases involving the revocation of good[-]conduct credits.' 730 ILCS 5/3-3-1(a)(2) (West 2002)." (Emphasis added.) *Lucas*, 349 Ill. App. 3d at 1002, 812 N.E.2d at 78.

9

The lack of the Board's ability to serve as an independent fact finder or to increase the number of days' credit lost by an inmate is a pivotal issue. The due process protection described in *Wolff* is available in proceedings that lead to the recommendation to revoke good-conduct credits because inmates have a liberty interest in good-conduct credits, the loss of which affects the length of their incarceration. Under *Wolff*, due process requires the government to give the inmate an opportunity for a hearing before good-conduct credit is revoked as a punishment for violating prison rules. As the court observed in *People v. Shevock*, 353 Ill. App. 3d 361, 818 N.E.2d 921 (2004), "The hearing, however, should be 'before the *** tribunal empowered to perform the judicial function involved.' " *Shevock*, 353 Ill. App. 3d at 366, 818 N.E.2d at 926 (quoting *Baltimore & Ohio R.R. Co. v. United States*, 298 U.S. 349, 368-39, 80 L. Ed. 1209, 1224, 56 S. Ct. 797, 807 (1936)). With regard to plaintiff's due process claim, the "judicial function involved" was the adjustment committee's consideration of the facts before it, its finding that he had violated disciplinary rules, and its recommendation that the revocation of good-conduct credits was appropriate for the offense. The Board's ratification of that loss of good-conduct credit on the recommendation of the Director was not a part of the judgment. Because the Board can only reduce or ratify the recommended amount of revoked credit and is without power to extend or expand the amount of time that an inmate may be incarcerated, it cannot deprive him of his liberty interest in good-conduct credit by approving the Director's recommendation. The Board "merely provides an 'extra layer of procedural protection' " appended to the constitutionally sufficient Department disciplinary proceedings and appeal process. *Lucas*, 349 Ill. App. 3d at 1004, 812 N.E.2d at 79 (quoting *United States ex rel. Duane v. Illinois Prisoner Review Board*, No. 89-C-7946, slip op. at ___ (N.D. Ill. July 3, 1990) (memorandum opinion and order)). Plaintiff was therefore not entitled to full procedural due process under *Wolff* when the Board approved the disciplinary action that was recommended

10

by the Director.  It follows that plaintiff was not entitled to an order of *mandamus* or *certiorari.*

CONCLUSION

For the foregoing reasons, the grant of the Board's motion to dismiss is affirmed.

Affirmed.

CHAPMAN and WEXSTTEN, JJ., concur.