Filed 11/26/08          NO. 4-06-0734

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| CAMERON L. SHAW, | ) | No. 04CF821 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Theodore E. Paine, |
| | ) | Judge Presiding. |

_____

JUSTICE STEIGMANN delivered the opinion of the court:

In October 2004, a jury convicted defendant, Cameron L. Shaw, of two counts of armed robbery (720 ILCS 5/18-2 (West 2004)).  The trial court later sentenced him to 10 years in prison on each count, with those sentences to run consecutively.

In July 2006, defendant pro se filed an amended petition for postconviction relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 through 122-8 (West 2006)).  In August 2006, the trial court dismissed defendant's amended petition, finding that it was frivolous and patently without merit.  In so finding, the court directed the circuit clerk to mail a copy of its written order to defendant's prison warden so that a hearing could be conducted, pursuant to section 3-6-3(d) of the Unified Code of Corrections (Code) (730 ILCS 5/3-6-3(d) (West 2006)), to determine whether some of defendant's good-conduct credit should be revoked because he filed a frivolous

pleading. The Department of Corrections (DOC) later revoked 180 days of defendant's good-conduct credit.

Defendant appeals, arguing that (1) the trial court erred by dismissing his amended petition for postconviction relief because it stated the gist of a constitutional claim; (2) the circuit clerk was not authorized to assess a fine against him; (3) pursuant to Public Act 95-0585 (Pub. Act 95-0585, eff. June 1, 2008 (2007 Ill. Legis. Serv. 5538-5542) (amending 730 ILCS 5/3-6-3(d)(2) (West 2006))), defendant's petition was not cognizable under section 3-6-3(d) of the Code; and (4) section 3-6-3(d) of the Code is unconstitutional. We affirm and remand with directions.

## I. BACKGROUND

In July 2004, the State charged defendant with two counts of armed robbery (720 ILCS 5/18-2 (West 2004)), alleging that while armed with a nine-millimeter handgun, he took currency from employees of Huck's Convenience Store and Family Dollar by threatening the imminent use of force.

A summary of the evidence from defendant's September and October 2004 jury trial, which included testimony, in pertinent part, from (1) Decatur police detective Shane Brandel and (2) defendant, showed the following.

Brandel testified that in July 2004, he conducted a videotaped interview with defendant. (The jury viewed the

- 2 -

video.)  During the interview, defendant admitted that he robbed Huck's after Brandel showed him photographs taken from the store's video-surveillance system.  Although defendant initially denied committing the Family Dollar robbery, he later provided Brandel a written statement in which he admitted that he robbed both Huck's and Family Dollar.

Brandel acknowledged that during the interview, he (1) told defendant that he heard that defendant stole $5,000 from the Federal Bureau of Investigation (FBI) and (2) asked defendant, "Don't you think [the FBI would] get upset about that kind of thing?"  Brandel stated that he might have heard about the theft from FBI Special Agent Jeff Warren.

On re-direct examination, the following colloquy occurred:

"[PROSECUTOR]:  Detective Brandel, *** [the] photographs from the Huck's armed robbery, they were given to the television station for broadcast?

[BRANDEL]:  Yes.

[PROSECUTOR]:  After the broadcast of these photos, did you hear from anyone giving you an indication as to the identity?

[BRANDEL]:  Yes.

[PROSECUTOR]:  Who was that?

- 3 -

[BRANDEL]:  FBI special agent Jeff War-
ren.

[PROSECUTOR]: So, the first involvement
Jeff Warren had was when he recognized the
photo on [television] and called and told you
who it was?

[BRANDEL]:  Yes.

[PROSECUTOR]: Did [Warren] have any
other involvement in this?

[BRANDEL]: No."

Defendant testified that he had a 1995 federal convic-
tion for criminal drug conspiracy.  While on parole from that
conviction, defendant became a FBI confidential informant.
Defendant explained that during one assignment, his FBI handler
gave him $10,000 to purchase drugs.  When the drug dealer failed
to appear, defendant returned only $5,000 to his handler.
Although defendant was not prosecuted, he stated that the FBI
"had not forgotten."

Defendant also testified that although he did not
commit the Family Dollar robbery, he admitted that he did only
after Brandel mentioned the FBI because he did not want to be
imprisoned in the federal penitentiary again.  However, defendant
admitted that Brandel did not suggest that he would have to go
back to federal prison.  Defendant also stated that he lied about

- 4 -

committing the Huck's robbery.

The jury later convicted defendant on both counts, and the trial court sentenced him as previously stated.

Defendant appealed, and this court affirmed. People v. Shaw, No. 4-04-1066 (April 6, 2006) (unpublished order under Supreme Court Rule 23).

In July 2006, defendant pro se filed an amended petition for postconviction relief under the Act. In August 2006, the trial court dismissed defendant's petition, finding that it was frivolous and patently without merit. In its written order, the court directed the circuit clerk to mail a copy of its order to defendant's prison warden "so [that] a hearing [could] be conducted pursuant to 730 ILCS 5/3[-]6-3(d) to determine whether up to 180 days of [defendant's] good-conduct credit should be revoked." 730 ILCS 5/3-6-3(d) (West 2006). Following a hearing, the prisoner review board found defendant guilty of violating offense No. 212--frivolous lawsuit (20 Ill. Adm. Code §504 app. A, No. 212, added at 27 Ill. Reg. 6214, 6295, eff. May 1, 2003). DOC later revoked 180 days of defendant's good-conduct credit.

This appeal followed.

## II. ANALYSIS

### A. The Trial Court's First-Stage Dismissal of Defendant's Amended Petition for Postconviction Relief

#### 1. Proceedings Under the Act

A defendant may proceed under the Act by alleging that

- 5 -

"in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2006). A petition brought under the Act is a collateral proceeding that permits inquiry only into constitutional issues that the defendant did not raise and could not have raised on direct appeal. People v. Blair, 215 Ill. 2d 427, 447, 831 N.E.2d 604, 617 (2005). In noncapital cases, the Act establishes a three-stage process for adjudicating a postconviction petition. 725 ILCS 5/122-1 through 122-8 (West 2006); People v. Jones, 213 Ill. 2d 498, 503, 821 N.E.2d 1093, 1096 (2004).

At the first stage, the trial court determines, without input from the State, whether the petition is frivolous or patently without merit. 725 ILCS 5/122-2.1 (West 2006). To avoid dismissal at the first stage, the petition need only state the gist of a constitutional claim for relief. People v. Patton, 315 Ill. App. 3d 968, 972, 735 N.E.2d 185, 189 (2000). To set forth the "gist" of a constitutional claim, the petition need not be detailed or set forth the claim in its entirety. People v. Williams, 364 Ill. App. 3d 1017, 1022, 848 N.E.2d 254, 258 (2006). In considering the petition at the first stage, the trial court may examine (1) the court file of the proceeding in which the petitioner was convicted and (2) any action taken by

- 6 -

the appellate court. The court should examine those records to determine whether the allegations in the petition are positively rebutted by the record. Williams, 364 Ill. App. 3d at 1022-23, 848 N.E.2d at 258.

The trial court may also dismiss claims that are (1) barred by res judicata or (2) forfeited because the defendant could have but did not raise them in an earlier proceeding. Blair, 215 Ill. 2d at 444-45, 831 N.E.2d at 615-16. We review de novo a first-stage dismissal of a petition under the Act. People v. Little, 335 Ill. App. 3d 1046, 1051, 782 N.E.2d 957, 962 (2003).

### 2. Defendant's Claim That His Postconviction Petition Stated the Gist of a Constitutional Claim

Defendant first argues that the trial court erred by dismissing his amended petition for postconviction relief because it contained the gist of a constitutional claim. Specifically, defendant contends (1) a violation of his right to confront witnesses against him guaranteed under both the United States and Illinois Constitutions (U.S. Const., amend. VI; Ill. Const. 1970, art. I, §2) and (2) ineffective assistance of appellate counsel because his counsel failed to raise the confrontational clause issue. We disagree.

"A defendant is guaranteed the right to confront the witnesses against him by the confrontation clauses of both the

- 7 -

United States and Illinois Constitutions." People v. Jura, 352 Ill. App. 3d 1080, 1084-85, 817 N.E.2d 968, 973 (2004). "Hearsay evidence, an out-of-court statement offered to prove the truth of the matter asserted, is generally inadmissible unless an exception applies." People v. Sullivan, 366 Ill. App. 3d 770, 779, 853 N.E.2d 754, 763 (2006). The reason for excluding hearsay is the lack of an opportunity to cross-examine the declarant. Jura, 352 Ill. App. 3d at 1085, 817 N.E.2d at 973-74. Thus, "'[t]estimony by a third party as to statements made by another nontestifying party identifying an accused as the perpetrator of a crime constitutes hearsay testimony and is inadmissible.'" People v. Yancy, 368 Ill. App. 3d 381, 385, 858 N.E.2d 454, 457 (2005), quoting People v. Lopez, 152 Ill. App. 3d 667, 672, 504 N.E.2d 862, 866 (1987).

Defendant bases his argument that his amended petition for postconviction relief stated the gist of a constitutional claim on the following assertion: Brandel's testimony that Warren identified him as the armed robber from the Huck's surveillance photographs (1) was inadmissible hearsay and (2) violated his right to confront Warren about his identification because Warren did not testify at trial.

Our review of the record reveals that Brandel's testimony concerned, in part, a telephone call that Brandel received from Warren in which Warren stated that he recognized the armed

- 8 -

robber from the Huck's surveillance photographs that were broadcast on television.  However, contrary to defendant's assertion, Brandel did not testify that Warren identified defendant as the armed robber, either by name or otherwise.  Indeed, the record shows that Brandel did not testify to any specific statements Warren made during the telephone call.

Moreover, even if we were to accept defendant's assertion that Brandel's testimony concerning his telephone conversation with Warren was inadmissible hearsay, which we do not, the admission of hearsay evidence is harmless error if no reasonable probability exists that the verdict would have been different had the hearsay been excluded.  People v. Gonzalez, 379 Ill. App. 3d 941, 955, 884 N.E.2d 228, 240 (2008).  Here, the evidence against defendant was overwhelming.  The jury (1) saw and heard defendant's videotaped confession, (2) considered defendant's written statement in which he admitted that he robbed both businesses, and (3) was able to judge defendant's credibility when he testified in his own defense.

Because Brandel's statements about his telephone conversation with Warren did not include any testimony regarding the identity of the armed robber, Brandel's statements neither constituted inadmissible hearsay nor violated defendant confrontation-clause right.  In addition, defendant's appellate counsel could not have been ineffective for failing to raise a

nonexistent confrontational-clause issue.  Thus, defendant's amended petition for postconviction relief failed to state the gist of a constitutional violation and was properly dismissed by the trial court as frivolous and patently without merit.

### B. Defendant's Claim That the Circuit Clerk Improperly Imposed a Violent Crime Victims Assistance Act Fine

Defendant also argues that because the court clerk was not authorized to impose a $25 fine under section 10(c)(1) of the Violent Crime Victims Assistance Act (Violent Crime Act) (725 ILCS 240/10(c)(1) (West 2004)), the fine should be vacated.  The State responds that even if the circuit clerk improperly imposed the fine, this court should remand with directions that the trial court impose the mandatory fine.  We agree with the State.

Sections 10(c)(1) and 10(c)(2) of the Violent Crime Act provide as follows:

"When *** no other fine is imposed, the following penalty shall be collected by the [c]ircuit [c]ourt [c]lerk:

(1) $25, for any crime of violence as defined in subsection (c) of [s]ection 2 of the Crimes Victims Compensation Act [(740 ILCS 45/2(c) (West 2004))]; and

(2) $20, for any other felony or misdemeanor, excluding any con-

- 10 -

servation offense."  725 ILCS

240/10(c)(1), (c)(2) (West 2004).

In People v. Swank, 344 Ill. App. 3d 738, 800 N.E.2d 864 (2003), this court defined the proper role of judicial and nonjudicial members in imposing statutory fines as follows:

"The imposition of a fine is a judicial act.  'The clerk of the court is a nonjudicial member of the court and, as such, has no power to impose sentences or levy fines.' [Citation.]  Instead, the circuit clerk has authority only to collect judicially imposed fines.  [Citation.]" Swank, 344 Ill. App. 3d at 747-48, 800 N.E.2d at 871.

We first note that defendant (1) did not raise on direct appeal or in his amended petition for postconviction relief the claim he now seeks this court to address and (2) does not present a constitutional question cognizable under the Act. However, just as a void order can be attacked at any time and in any court either directly or collaterally (People v. Thompson, 209 Ill. 2d 19, 27, 805 N.E.2d 1200, 1205 (2004)), this court will address the merits of defendant's argument.

The record in this case shows that (1) the trial court did not impose any fine and (2) no evidence exists that the circuit clerk imposed a fine.  However, the State concedes that

the circuit clerk imposed a $25 fine pursuant to section 10(c)(1) of the Violent Crime Act (725 ILCS 240/10(c)(1) (West 2004)).

Because our legislature has mandated that the trial court--as opposed to the circuit clerk--shall impose a Violent Crime Act fine when no other fine is assessed, we are bound to (1) vacate the circuit clerk's improper imposition of the fine and (2) remand for the proper imposition of the fine by the court. See People v. Allen, 371 Ill. App. 3d 279, 285, 868 N.E.2d 297, 302-03 (2006) (where this court vacated fines improperly imposed by the circuit clerk and remanded for the proper imposition by the trial court).

However, as the State correctly notes, armed robbery is not included in section 2 of the Crime Victims Compensation Act (740 ILCS 45/2(c) (West 2004)). Therefore, the proper amount of the fine is $20 pursuant to section 10(c)(2) of the Violent Crime Act (725 ILCS 240/10(c)(2) (West 2004)). Thus, because the imposition of the fine is a judicial function beyond the authority of the circuit clerk, we vacate the $25 fine improperly imposed by the circuit clerk and remand for imposition of the proper fine by the trial court.

C. Defendant's Claim That Section 3-6-3(d) of the Code Does Not Apply to His Amended Petition for Postconviction Relief

Defendant next argues that section 3-6-3(d) of the Code (730 ILCS 5/3-6-3(d) (West 2006)) does not apply to his amended petition for postconviction relief. Specifically, defendant

- 12 -

contends that Public Act 95-0585, which amended section 3-6-3(d)(2) to exclude a defendant's first postconviction petition from the definition of "lawsuit," applies to his case. Therefore, defendant asserts that his 180 days of good-conduct credit should be restored because he did not file "a frivolous lawsuit" as defined by section 3-6-3(d)(2) of the Code. We disagree.

At the time (1) the trial court found defendant's amended petition for postconviction relief was frivolous and (2) DOC revoked defendant's good-conduct credit, sections 3-6-3(d) and 3-6-3(d)(2) of the Code provided as follows:

"If a lawsuit is filed by a prisoner *** and the [trial] court makes a specific finding that a pleading, motion, or other paper filed by the prisoner is frivolous, the [DOC] shall conduct a hearing to revoke up to 180 days of good[-]conduct credit by bringing charges against the prisoner sought to be deprived of the good[-]conduct credits before the [p]risoner [r]eview [b]oard ***.

For purposes of this subsection (d):

* * *

(2) 'Lawsuit' means a petition for post[]conviction relief under [a]rticle 122 of the Code ***."

- 13 -

730 ILCS 5/3-6-3(d)(2) (West 2006).
However, effective June 1, 2008, while defendant's appeal was pending before this court, the legislature amended section 3-6-3(d)(2) to exclude a defendant's initial postconviction petition from the definition of lawsuit as follows:

> "(2) 'Lawsuit' means *** a second or
> subsequent petition for post[]conviction
> relief under [a]rticle 122 of the Code ***
> whether filed with or without leave of court
> ***."  Pub. Act 95-0585, eff. June 1, 2008
> (Ill. Legis. Serv. 5538-42) (amending 730
> ILCS 5/3-6-3(d)(2) (West 2006)).

Because Public Act 95-0585 was not effective prior to defendant's appeal to this court, we must determine if the amendment to section 3-6-3(d)(2) applies retroactively.

In People ex rel. Madigan v. Petco Petroleum Corp., 363 Ill. App. 3d 613, 620, 841 N.E.2d 1065, 1071 (2006), citing People v. Atkins, 217 Ill 2d 66, 71-73, 838 N.E.2d 943, 946-48 (2005), this court discussed whether legislative amendments are retroactive as follows:

> "The [supreme] court held that when the leg-
> islature has not indicated whether an amend-
> ment should be applied retroactively, in
> accordance with section 4 of the Statute on

- 14 -

Statutes (5 ILCS 70/4 (West 2004)), proce-

dural changes to statutes may be applied

retroactively, while substantive changes may

not. [Citation.]"

The Atkins court also explained the difference between substan-

tive and procedural amendments as follows:

"'In general, procedural law is "'[t]hat

which prescribes the method of enforcing

rights or obtaining redress for their inva-

sion; machinery for carrying on a suit.'"

[Citation.]  Substantive law, in contrast,

establishes the rights whose invasion may be

redressed through a particular procedure.

More specifically, procedure embraces "plead-

ing, evidence[,] and practice.  Practice

means those legal rules which direct the

course of proceedings to bring parties into

court and the course of the court after they

are brought in."  [Citation.]'"  Atkins, 217

Ill. 2d at 72, 838 N.E.2d at 947, quoting

Rivard v. Chicago Fire Fighters Union, Local

No. 2, 122 Ill. 2d 303, 310-11, 522 N.E.2d

1195, 1199 (1988).

In this case, the legislature's amendments to section

3-6-3(d)(2) involve substantive changes.  Specifically, the legislature restricted the scope of the statute by eliminating a defendant's initial frivolous pleading, rather than altering the method for enforcing rights or the machinery for the progression of a suit once it has commenced.  See Atkins, 217 Ill. 2d at 72, 838 N.E.2d at 947 ("Substantive amendments include those that alter the scope or the elements of a crime").  Therefore, we conclude that (1) the legislature's amendment to section 3-6-3(d)(2) of the Code does not apply retroactively in this case and (2) section 3-6-3(d) before the 2008 amendment does apply to defendant's amended postconviction petition.

### D. Defendant's Claim That Section 3-6-3(d) of the Code Is Unconstitutional

Last, defendant argues that section 3-6-3(d) of the Code is unconstitutional.  Specifically, defendant contends that section 3-6-3(d) violates the due-process and equal-protection clauses of the United States and Illinois Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2) and chills the right of access to the courts.  We address defendant's contentions in turn.

### 1. The Standard of Review

The constitutionality of a statute is a question of law, which we review de novo.  People v. McCarty, 223 Ill. 2d 109, 135, 858 N.E.2d 15, 32 (2006).  All statues carry a strong presumption of constitutionality.  People v. Johnson, 225 Ill. 2d

- 16 -

573, 584, 870 N.E.2d 415, 421 (2007).  The burden of rebutting the presumption is on the party challenging the statute to demonstrate a clear constitutional violation.  General Motors Corp. v. State of Illinois Motor Vehicle Review Board, 224 Ill. 2d 1, 24, 862 N.E.2d 209, 225 (2007).  This court has a duty to construe a statute as constitutional.  People v. Jones, 223 Ill. 2d 569, 595-96, 861 N.E.2d 967, 983 (2006).

### 2. Defendant's Claim That Section 3-6-3(d) Violates Due-Process and Equal-Protection Guarantees

a. Challenges to the Constitutionality of a Statute

"When a statute is challenged as unconstitutional under due process or equal protection, our analysis is essentially the same."  People v. Gale, 376 Ill. App. 3d 344, 359, 876 N.E.2d 171, 185 (2007).  If the statute involves a fundamental right or a suspect classification, we employ a strict-scrutiny analysis in which we examine whether the statute is (1) necessary to achieve a compelling state interest and (2) narrowly tailored to accomplish that interest.  Gale, 376 Ill. App. 3d at 359, 876 N.E.2d at 186; see People v. Cornelius, 213 Ill. 2d 178, 204, 821 N.E.2d 288, 304 (2004) (For a statute to "survive strict scrutiny, *** the legislature must employ the least restrictive means consistent with the attainment of the intended goal").

However, when a statute does not affect a fundamental constitutional right or a suspect classification, the test for determining whether the statute is constitutional is the

- 17 -

rational-basis test. Wauconda Fire Protection District v. Stonewall Orchards, LLP, 214 Ill. 2d 417, 434, 828 N.E.2d 216, 226 (2005). Under this analysis, the challenged statute must simply bear a rational relationship to the purpose the legislature intended to achieve by enacting the law. In re J.W., 204 Ill. 2d 50, 67, 787 N.E.2d 747, 757 (2003). We need not be concerned with the wisdom of the statute or even if it is the best means to achieve its goal but only with whether any sort of conceivable basis exists for finding the statute rationally related to a legitimate state interest. Gale, 376 Ill. App. 3d at 359, 876 N.E.2d at 186.

### b. Defendant's Claim That Section 3-6-3(d) Violated His Due-Process Rights

Defendant contends that section 3-6-3(d) of the Code is unconstitutional because it violates the due-process guarantees of the United States and Illinois Constitutions. We disagree.

"Illinois inmates have a statutory right to receive good-conduct credits, and thus[,] they have a liberty interest entitling them to procedural safeguards under the due-process clause of the fourteenth amendment." Lucas v. Taylor, 349 Ill. App. 3d 995, 1000, 812 N.E.2d 72, 76 (2004). Therefore, "'some kind of hearing is required at some time before a person is finally deprived' of his constitutionally protected liberty interest." Lucas, 349 Ill. App. 3d at 1003, 812 N.E.2d at 79, quoting Wolff v. McDonnell, 418 U.S. 539, 557-58, 41 L. Ed. 2d

- 18 -

935, 952, 94 S. Ct. 2963, 2975 (1974); see also Ford v. Walker, 377 Ill. App. 3d 1120, 1125, 888 N.E.2d 123, 127 (2007) (due process during prison disciplinary proceedings requires that an inmate be given (1) 24-hour advance notice of the hearing, (2) the opportunity to call witnesses and present evidence consistent with institutional safety and correctional goals, and (3) a written statement of the evidence the fact finder relied upon to support finding of guilt); Lucas, 349 Ill. App. 3d at 1000-03, 812 N.E.2d at 76-79 (summarizing the procedural steps before an inmate's good-conduct credit can be revoked). Further, the hearing on a defendant's due-process claims should be conducted by the decision-making body empowered to perform the judicial function involved. Rodriguez v. Illinois Prisoner Review Board, 376 Ill. App. 3d 429, 436, 876 N.E.2d 659, 666 (2007).

Defendant's assertion that section 3-6-3(d) punishes him by depriving him of liberty for six months for seeking redress of his grievances in good faith (1) misconstrues (a) the effect of the trial court's findings under section 3-6-3(d) of the Code and (b) the due-process rights afforded inmates deprived of their good-conduct credit and (2) is improperly directed to this court.

In People v. Shevock, 353 Ill. App. 3d 361, 366, 818 N.E.2d 921, 926 (2004), this court, in rejecting the defendant's argument that the trial court denied him due process because it

informed DOC of its frivolous finding without first giving him the opportunity to contest the court's finding, stated the following:

> "With regard to defendant's due-process claim, the 'judicial function involved' was the finding that he had violated offense No. 212 (20 Ill. Adm. Code §504[] app. A, No. 212 (2003) (see 27 Ill. Reg. 6241, 6295, eff. May [1,] 2003) and the resulting punishment of revocation of 180 days' good-conduct credit. That finding and punishment were not part of the judgment in this case. The trial court's summary dismissal of the postconviction petition served merely as the basis of a 'charge' before DOC, the tribunal empowered to find defendant guilty or not guilty of the DOC-defined offense of 'frivolous pleading' (20 Ill. Adm. Code §504[] app. A, No. 212 (2003) (see 27 Ill. Reg. 6241, 6295, eff. May 1, 2003)). If the hearing before DOC failed to satisfy due process, defendant should have administratively challenged that decision or brought an appropriate action against DOC."

In this case, as in Shevock, the plain language of

section 3-6-3(d) of the Code does not deprive defendant of any liberty interest but, instead, merely directs the procedure that must take place after a trial court finds a defendant's postconviction petition is frivolous under the Act. Specifically, DOC is required to hold a hearing to determine if defendant violated offense No. 212--frivolous lawsuit (20 Ill. Adm. Code §504 app. A, No. 212, added at 27 Ill. Reg. 6214, 6295, eff. May 1, 2003)--before DOC can revoke any good-conduct credit (730 ILCS 5/3-6-3(d) (West 2006)). Thus, any due-process violation claims should be addressed to DOC because it is the administrative agency empowered to deprive an inmate of his good-conduct credit. Moreover, because the record does not show that defendant exhausted his administrative remedies in pursuing his due-process claims, this issue is not properly before this court. See Ford, 377 Ill. App. 3d at 1124, 888 N.E.2d at 126-27 ("A party aggrieved by an administrative decision cannot seek judicial review unless he has first pursued all available administrative remedies").

### c. Defendant's Claim That Section 3-6-3(d) Violated His Equal-Protection Rights

Defendant contends that section 3-6-3(d) of the Code is unconstitutional because it violates the equal-protection clauses of the United States and Illinois Constitutions. We disagree.

Equal protection requires that the government "treat similarly situated individuals in a similar fashion." People v.

- 21 -

<u>Carter</u>, 377 Ill. App. 3d 91, 105, 877 N.E.2d 446, 459 (2007).

When analyzing legislation under equal protection, the level of scrutiny depends on the type of legislative classification at issue. <u>People v. Botruff</u>, 212 Ill. 2d 166, 176, 817 N.E.2d 463, 469 (2004). For purposes of equal-protection analysis, "[n]either indigent defendants nor prisoners comprise suspect classifications." <u>Carter</u>, 377 Ill. App. 3d at 99, 877 N.E.2d at 455; see <u>Botruff</u>, 212 Ill. 2d at 176-77, 817 N.E.2d at 469 (suspect classifications include race, national origin, gender, or illegitimacy; in cases not involving these classifications, the rational-basis test is to be used). The government may enact legislation that draws distinctions between different categories, but any such differentiation must be rationally related to the legislation's purpose. <u>People v. Mobley</u>, 383 Ill. App. 3d 89, 93, 890 N.E.2d 673, 677 (2008). If the court finds any set of facts that justify the legislature's differing classifications, the statute will not be construed as violating the equal-protection clause of the constitution. <u>Wauconda Fire Protection District</u>, 214 Ill. 2d at 434, 828 N.E.2d at 226.

Contrary to defendant's assertion that the operation of section 3-6-3(d) of the Code furthers no valid governmental interest, the State has a legitimate interest in ensuring that its courts are not overburdened with frivolous litigation. By enacting various statutory provisions, the legislature has made

- 22 -

clear that, while it is willing to offer certain types of relief to inmates beyond their trials and appeals, it is "concerned with the number of frivolous petitions that may be filed seeking such relief which, in turn, impacts the efficiency of our courts and the effectiveness of our administrative process." Gale, 376 Ill. App. 3d at 360, 876 N.E.2d at 187; see Tubwell v. Anderson, 776 So. 2d 654, 660 (Miss. 2000) (where the Supreme Court of Mississippi rejected a defendant's claim that the statute that deprived him of good-conduct credit for filing a frivolous claim violated the equal-protection clause of the United States Constitution because it was directed toward inmates). Thus, because (1) prisoners are not considered a suspect classification for equal-protection purposes and (2) the challenged statute bears a rational relationship to the purpose the legislature intended to achieve, section 3-6-3(d) of the Code does not violate defendant's equal-protection rights.

### 3. Defendant's Claim That Section 3-6-3(d) Chills the Right of Access to the Courts

Defendant contends that section 3-6-3(d) of the Code is unconstitutional because it "chills" the right of access to the courts by punishing court filings that are made in good faith and in an orderly way. We disagree.

"The constitutional right of access to the courts requires only that inmates be assisted in preparing and filing meaningful legal papers by providing them with adequate law

- 23 -

libraries or assistance from persons trained in [the] law."  Helm
v. Washington, 308 Ill. App. 3d 255, 260, 720 N.E.2d 326, 329
(1999).  To establish a violation of the right to access to the
courts, an inmate must prove that he suffered an actual injury,
defined as prejudice to existing or impending litigation.  Hadley
v. Snyder, 335 Ill. App. 3d 347, 354, 780 N.E.2d 316, 323 (2002);
see Murillo v. Page, 294 Ill. App. 3d 860, 866, 690 N.E.2d 1033,
1039 (1998) (an inmate must allege that the prison authorities'
conduct disrupted or delayed his pending or contemplated litiga-
tion in asserting a violation of his right to access the courts).

    In support of his contention, defendant relies on the
United States Supreme Court's holding in Johnson v. Avery, 393
U.S. 483, 21 L. Ed. 2d 718, 89 S. Ct. 747 (1969).  However, Avery
does not offer defendant any support.  In Avery, 393 U.S. at 490,
21 L. Ed. 2d at 724, 89 S. Ct. at 751, the Supreme Court invali-
dated a Tennessee prison regulation that barred inmates from
assisting other inmates in preparing postconviction petitions.

    In this case, defendant does not assert that (1) he was
deprived of legal assistance, (2) prison officials disrupted or
delayed his ability to file a claim, or (3) he suffered prejudice
to existing or impending litigation.

### III. CONCLUSION

    For the reasons stated, we affirm the trial court's
judgment and remand with directions that the trial court impose

- 24 -

the proper Violent Crime Act fine.

Affirmed and remanded with directions.

KNECHT and COOK, JJ., concur.