# Illinois Official Reports

## Appellate Court

*Ruhl v. Department of Corrections*, 2015 IL App (3d) 130728

| | |
|---|---|
| Appellate Court Caption | RONALD RUHL, ROBERT HERNANDEZ and DOUGLAS OAKS, Plaintiffs-Appellants, v. THE DEPARTMENT OF CORRECTIONS, Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-13-0728 |
| Rule 23 Order filed<br>Motion to publish<br>allowed<br>Opinion filed | May 8, 2015<br><br>June 23, 2015<br>June 23, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 12-MR-1674; the Hon. Roger Rickmon, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Ronald Ruhl and Douglas E. Oaks, both of Joliet, and Robert Hernandez, of Mt. Sterling, appellants *pro se*.<br><br>Lisa Madigan, Attorney General, of Chicago (Ann C. Maskaleris, Assistant Attorney General, of counsel), for appellee |

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Justices Holdridge and Wright concurred in the judgment and opinion.


**OPINION**

¶ 1        Plaintiffs, Ronald Ruhl, Robert Hernandez and Douglas Oaks, inmates incarcerated in the Illinois Department of Corrections (DOC), filed a petition for writ of *mandamus* against the DOC in the Will County circuit court. The complaint alleged that the DOC had been overcharging plaintiffs for goods sold at the prison commissary in violation of section 3-7-2a of the Unified Code of Corrections (Unified Code) (730 ILCS 5/3-7-2a (West 2008)).

¶ 2        The DOC filed a motion to dismiss pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2012)), arguing that the inmates lacked standing to enforce section 3-7-2a of the Unified Code against it.

¶ 3        The trial court granted the DOC's motion to dismiss.

¶ 4        Plaintiffs appeal, arguing that this court's recent decision in *Jackson v. Randle*, 2011 IL App (4th) 100790, is flawed and they do, in fact, have standing to enforce the relevant statutory provision.

¶ 5        We affirm.


¶ 6                                FACTS

¶ 7        In August 2012, Ruhl, an inmate in the DOC's custody incarcerated at the Stateville Correctional Center in Joliet, filed a complaint for *mandamus* relief against the DOC. Ruhl alleged that the DOC had been "illegally" overcharging him for goods sold at the prison commissary by marking up the price of those goods beyond the percentage price caps outlined in section 3-7-2a of the Unified Code (730 ILCS 5/3-7-2a (West 2008)). Section 3-7-2a allows an additional charge of up to 35% for tobacco products and up to 25% for nontobacco products. According to Ruhl, the Illinois Auditor General determined in a report that the DOC had been exceeding the statutorily allowed maximum markup on goods sold to inmates by 9% in its prison commissaries since November 1, 2005. He alleged that the DOC's failure to comply with section 3-7-2a had resulted in its "illegal procurement" of $576.62 from his inmate trust fund account.

¶ 8        Ruhl's petition further asserted that he had attempted to seek relief for the DOC's violation through various avenues. He initially sought relief through the prison's grievance process, which ultimately resulted in the Administrative Review Board finding "no merit" to his grievance. Next, he sought "a remedy through the Illinois Court of Claims" that he alleged resulted in a rejection over subject matter jurisdiction, with a final ruling issued on May 8, 2012. Finally, Ruhl alleged that he had "contacted several different government agencies" for assistance in compelling the DOC to comply with section 3-7-2a, all to no avail.

¶ 9        As for relief, Ruhl's petition sought a ruling that the DOC's actions in exceeding the allowed statutory markup on commissary items was unlawful as contrary to the language of section 3-7-2a. He requested the court enter an order: (1) compelling the DOC to comply with

section 3-7-2a; (2) crediting his inmate trust fund account with all "illgotten funds" since November 1, 2005; and (3) compelling payment of all his costs and fees.

¶ 10 The DOC moved to dismiss Ruhl's complaint pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2012)). The DOC contended that inmates lacked standing to enforce section 3-7-2a of the Unified Code. It explained that in *Jackson v. Randle*, 2011 IL App (4th) 100790, the Fourth District affirmed the dismissal of an inmate's complaint, nearly identical to Ruhl's, on the basis that inmates lack standing to enforce the percentage price caps for commissary goods outlined in section 3-7-2a of the Unified Code against the DOC. Ruhl opposed the motion to dismiss, to which the DOC responded.

¶ 11 During briefing on the DOC's motion to dismiss, plaintiffs Hernandez and Oaks, also inmates in the DOC's custody incarcerated at the Stateville Correctional Center, each filed complaints for *mandamus* relief against the DOC nearly identical to the petition filed by Ruhl. The allegations in Oaks' and Hernandez's complaints mirrored those in Ruhl's with the exception that neither Oaks nor Hernandez alleged he had pursued an action in the Court of Claims or sought the assistance of other governmental agencies in compelling the DOC's compliance.

¶ 12 Oaks alleged that the DOC illegally procured more than $361 from his inmate trust fund account, while Hernandez alleged that more than $537 had been illegally procured from his inmate trust fund account. Both Oaks and Hernandez sought relief identical to Ruhl's. The DOC separately moved to dismiss Oaks' petition for the same reasons it sought dismissal of Ruhl's.

¶ 13 In April of 2013, Ruhl moved to consolidate Oaks' and Hernandez's cases with his "as a matter of judicial economy and convenience" because their complaints were "essentially identical" to his. Ruhl sought consolidation to "avoid all parties submitting essentially the same filings, arguments, etc., and the court issuing multiple rulings on this same matter." Oaks and Hernandez supported Ruhl's motion to consolidate by affidavits, each averring that he was in favor of the consolidation "for reasons of judicial economy and convenience." On April 25, 2013, the trial court consolidated the three cases.

¶ 14 The trial court heard argument on the DOC's motion to dismiss in June and July of 2013. On July 25, 2013, the court stated that it had "to grant the motion to dismiss" though it did not "necessarily agree with the rationale of the *Jackson* court." The court further stated that it had "given [its] preliminary determination" and that it would "issue a written opinion" but that the "appeal time starts to run when I issue and sign a written order, so right now there is no 30 days running."

¶ 15 Plaintiffs filed a notice of appeal on September 6, 2013.

¶ 16 On December 31, 2013, the trial court entered a two-page order, noting the actions had been consolidated and recounting the parties' arguments. The court granted the DOC's motion to dismiss, reasoning that under the rationale of *Jackson*, section 3-7-2a of the Unified Code did not confer upon plaintiffs the right to challenge the DOC's policies or commissary prices.

¶ 17                                    ANALYSIS

¶ 18 Plaintiffs argue that the trial court erred in granting the DOC's motion to dismiss, where plaintiffs did have standing to enforce section 3-7-2a and the Fourth District's decision in

*Jackson* is contrary to our supreme court's decision in *Hadley v. Illinois Department of Corrections*, 224 Ill. 2d 365 (2007). We disagree.

¶ 19    Section 3-7-2a of the Unified Code provides, in pertinent part, as follows:

"If a facility maintains a commissary or commissaries serving inmates, the selling prices for all goods shall be sufficient to cover the costs of the goods and an additional charge of up to 35% for tobacco products and up to 25% for non-tobacco products. The amount of the additional charges for goods sold at commissaries serving inmates shall be based upon the amount necessary to pay for the wages and benefits of commissary employees who are employed in any commissary facilities of the Department. The Department shall determine the additional charges upon any changes in wages and benefits of commissary employees as negotiated in the collective bargaining agreement. \*\*\*

Items purchased for sale at any such commissary shall be purchased, wherever possible, at wholesale costs. If a facility maintains a commissary or commissaries as of the effective date of this amendatory Act of the 93rd General Assembly, the Department may not contract with a private contractor or vendor to operate, manage, or perform any portion of the commissary services. The Department may not enter into any such contract for commissary services at a facility that opens subsequent to the effective date of this amendatory Act of the 93rd General Assembly." 730 ILCS 5/3-7-2a (West 2008).

¶ 20    First, we note that plaintiffs brought their complaint in the form of a *mandamus* petition. *Mandamus* is an extraordinary remedy that is granted to enforce the performance of a public officer's official nondiscretionary duties as a matter of right. *Rodriguez v. Illinois Prisoner Review Board*, 376 Ill. App. 3d 429, 433 (2007). For *mandamus* to issue, a plaintiff must establish material facts that demonstrate: (1) his clear right to the requested relief; (2) a clear duty on the defendant to act; and (3) clear authority existing in the defendant to comply with an order granting *mandamus* relief. *Id*. at 433-34. We review orders dismissing a petition for *mandamus* and orders granting a defendant's motion to dismiss pursuant to section 2-619(a)(9) *de novo*. See *id*. at 434; *Lacey v. Village of Palatine*, 232 Ill. 2d 349, 359 (2009).

¶ 21    According to the State, whether plaintiffs have a clear right to the relief they request turns on whether or not they have standing to enforce the percentage price caps for commissary goods outlined in section 3-7-2a of the Unified Code. "Generally, the doctrine of standing is designed to 'preclude persons who have no interest in a controversy from bringing suit.' " *Jackson v. Randle*, 2011 IL App (4th) 100790, ¶ 14 (quoting *Glisson v. City of Marion*, 188 Ill. 2d 211, 221 (1999)).

¶ 22    As the State points out, both in its motion to dismiss and on appeal, the *Jackson* court recently decided this exact issue. While Jackson did not seek relief through a *mandamus* petition, his arguments were identical to plaintiffs' here, *i.e.*, the DOC overcharged him and other inmates in violation of section 3-7-2a of the Unified Code. 730 ILCS 5/3-7-2a (West 2008); *Jackson*, 2011 IL App (4th) 100790, ¶ 16. The *Jackson* court rejected this argument, stating that section 3-7-2a "does not expressly confer standing on inmates–or anyone else, for that matter–to enforce the cost percentages outlined therein." *Id.*

¶ 23    Relying heavily on *Ashley v. Snyder*, 316 Ill. App. 3d 1252, 1258-59 (2000), the *Jackson* court went on to note that DOC regulations and the Unified Code were designed to provide guidance to prison officials in the administration of prisons, not to create more rights for

inmates than those that are constitutionally required. "Inmates have a constitutional right to adequate water, shelter, food, drinking water, clothing, sanitation, and medical care, personal safety, reasonable access to courts, and the reasonable opportunity to exercise religious freedom." *Jackson*, 2011 IL App (4th) 100790, ¶ 17 (citing *Ashley*, 316 Ill. App. 3d at 1258-59). Conspicuously absent from this list is an inmate's right to commissary items at a specific price, or commissary items generally.

¶ 24 Plaintiffs make a sweeping reference to due process, arguing that the notion that inmates do not have standing to enforce the statute "defies the basic principles of common law and due process." To the extent that this constitutes a due process argument, it is easily dispelled. In *Duane v. Hardy*, 2012 IL App (3d) 110845, ¶¶ 14-15, this court held that plaintiff had no enforceable rights under section 3-7-2(c), which plaintiff argued entitled him to one hour out-of-cell exercise daily. The court noted that "[p]rison regulations, including statutory provisions, do not confer rights on inmates or provide a basis for an inmate's constitutional claims." *Id.* ¶ 15 (citing *Dupree v. Hardy*, 2011 IL App (4th) 100351, ¶¶ 25-26). Furthermore, and relying on *Jackson*, 2011 IL App (4th) 100790, ¶ 17, the *Duane* court found that because plaintiff was not entitled under the statute to one hour of daily exercise out of his cell, he cannot claim a due process violation based on the DOC's alleged failure to provide him notice and an opportunity to be heard before he is deprived of the claimed right. *Duane*, 2012 IL App (3d) 110845, ¶ 16.

¶ 25 We find no reason to deviate from the holding of *Jackson*. We similarly find that plaintiffs here have no constitutionally protected rights to commissary items at a specified price, nor does section 3-7-2a function to create one. Indeed, they have no right to a commissary at all, where the creation and maintenance of a prison commissary falls completely within the discretion of the DOC. See 730 ILCS 5/3-7-2a (West 2012). Plaintiffs failed to establish a clear right to the relief requested; therefore, the trial court did not err in dismissing their *mandamus* petition.

¶ 26 Finally, we reject plaintiffs' claim that *Jackson* is contrary to our supreme court's decision in *Hadley v. Illinois Department of Corrections*, 224 Ill. 2d 365 (2007). In *Hadley*, the plaintiff took issue with the DOC's interpretation of section 3-6-2(f) of the Unified Code, which exempts an " 'indigent' " inmate from a $2 copayment for nonemergency medical and dental treatment, providing for recoupment of such copayment against an inmate's current or future funds in his inmate trust account. (Emphasis omitted.) *Id.* at 372-73 (quoting 730 ILCS 5/3-6-2(f) (West 2004)). To implement the provisions of section 3-6-2(f), the DOC adopted certain administrative rules. *Id.* at 373. Our supreme court concluded that the DOC's definition of " 'indigent' " prisoner within its administrative rules conflicted with the Unified Code. *Id.* at 376.

¶ 27 *Hadley* is thus easily distinguishable from the case at bar, where we are not confronted with administrative rules or definitions that conflict with the Unified Code. Furthermore, the court's analysis was limited to the statutory interpretation issue; there was no argument or discussion regarding standing or whether the Unified Code provided an inmate with an enforceable cause of action. The holding of *Jackson* regarding section 3-7-2a is thus not contrary to our supreme court's decision in *Hadley*.

¶ 28 We, accordingly, find that the trial court did not err in dismissing plaintiffs' *mandamus* petition.

- 5 -

¶ 29                                CONCLUSION

¶ 30            For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

¶ 31            Affirmed.