NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250678-U

NO. 4-25-0678

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 10, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Logan County |
| GERALD L. THOMAS JR., | ) | No. 17CF202 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William G. Workman, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Presiding Justice Steigmann and Justice Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, concluding the trial court's denial of defendant's motion for leave to file a successive postconviction petition was proper because defendant did not raise a colorable claim of actual innocence.

¶ 2    Defendant, Gerald L. Thomas Jr., appeals from the trial court's July 2023 denial of his motion for leave to file a successive postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)) where he alleged actual innocence based on newly discovered evidence. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    This court has twice discussed the underlying facts in this case. See *People v. Thomas*, 2022 IL App (4th) 210746-U; *People v. Thomas*, 2021 IL App (4th) 190099-U. Accordingly, we discuss only those facts necessary to resolve the issues presented in this appeal.

¶ 5    In December 2017, a grand jury charged defendant by indictment with two counts

of attempt (first degree murder), a Class X felony (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2016)) (counts I and II); aggravated battery, a Class X felony (720 ILCS 5/12-3.05(e)(1) (West 2016)) (count III); aggravated discharge of a firearm, a Class 1 felony (720 ILCS 5/24-1.2(a)(2) (West 2016)) (count IV); and unlawful possession of a weapon by a felon, a Class 3 felony (720 ILCS 5/24-1.1(a) (West 2016)) (count V). The charges alleged defendant used a firearm to shoot Manuel Pratt and Alonzo Rose on October 1, 2017.

¶ 6                                         A. Bench Trial

¶ 7        In December 2018, defendant waived his right to a jury trial, electing instead to have a bench trial, where 13 witnesses testified and several exhibits were presented.

¶ 8        On October 1, 2017, Sergeant Todd Bauer of the Logan County Sheriff's Office responded to a "shots fired call" at approximately 2 p.m. at 713 Walnut Street in Lincoln, Illinois. When Bauer arrived at the scene, he "observed a male laying on the ground near a car and another male *** tending to him because he had some gunshot wounds." Bauer "found four shell casings near a tree and a fence."

¶ 9        Nolan Kitterman, a neighboring resident, testified that while in the bathroom of his home on 2nd Street in Lincoln, he heard approximately "eight to ten shots" fired. Kitterman testified "the first two shots were definitely clear," and he heard "more than one shot at the same time," so he ran to his front window and saw "people scattering." Kitterman "saw a person laying on the ground." When Kitterman arrived at the scene, the man lying on the ground "had stood up and was laying against the car."

¶ 10                                        1. *Pratt's Testimony*

¶ 11       Pratt was an inmate in the Illinois Department of Corrections (DOC) who testified pursuant to a plea agreement. Pratt acknowledged the State offered him a seven-year sentence in

an unrelated case in exchange for his testimony. Pratt testified, on October 1, 2017, he was shot twice in his left arm by defendant and shot once in the chest by Jeremiah Friend. As of the time of trial, the bullets remained in Pratt's back, shoulder, and wrist.

¶ 12        Pratt testified he and Alonzo Rose were cousins and they shared an apartment in the "two-flat apartment building" at 713 Walnut Street. Pratt testified, on September 15, 2017, a fight broke out between defendant and Rose at Walmart after Pratt told defendant he wanted a "one-on-one" fight with Shondale Henson.

¶ 13        Pratt testified, on October 1, 2017, he was driving home with Rose when he stopped his vehicle at "3rd and College" so Rose could talk to someone. Shortly after, a blue Ford "truck pulled up," and Pratt "heard a commotion." Pratt observed defendant "standing by his car door yelling out" at Rose. Pratt exited his vehicle and stepped between Rose and defendant, believing a fight was about to occur. According to Pratt, defendant "hopped in his car" and reversed towards him before driving away.

¶ 14        Pratt testified, after returning home, he sat in the driveway, waiting for a mechanic to come by for his car. Rose opened the hood and smoked a cigarette on the porch. Pratt testified, within 10 minutes of returning home, he observed defendant's vehicle "[c]oming around the corner on Maple by the [Logan County Health Department]." Pratt observed a white Cadillac truck "pull up right behind the blue Ford."

¶ 15        Pratt watched as both vehicles exited the parking lot and eventually stopped in front of his apartment. Pratt testified defendant exited the front driver-side door of the Ford and walked around to the back of the Cadillac. Friend exited the Cadillac. Pratt testified Friend and defendant stood in his driveway, and the following exchange ensued:

"Q. What happens after they get out of the car and they go into those

positions?

A. Shooting. [Rose] takes off running to the back of the house. Once [Friend] got out, [Friend] had a gun in his hand. I was standing leaning on the car still. I heard [Rose's] feet [taking] off, rocks kicking. That's when [defendant] came around, shot toward the back of the house at [Rose].

Q. When they got out of the vehicles, [Friend] and [defendant], do you see any guns in their hands?

A. Yes."

¶ 16 Pratt testified he saw Friend and defendant fire between two to four shots each, with guns pointed "[t]owards [him]." Pratt stated he was hit twice in his left arm and once in his chest. After collapsing from his wounds, Pratt "laid on the ground" as the shooters returned to their vehicles and fled the scene. The State admitted three photographs of Pratt's bullet wounds taken at the hospital. On cross-examination, Pratt testified he did not disclose defendant as one of his shooters until entering into his plea agreement with the State on October 26, 2017.

¶ 17                                    2. *Henson's Testimony*

¶ 18 Henson testified he initially gave false statements to the police because he had "a lot of loyalty for" defendant. In exchange for his testimony in this case, Henson acknowledged the State offered him a sentence of "eight years at 85 percent" in his related aggravated battery case.

¶ 19 In October 2016, after losing his job in Chicago, Illinois, Henson moved in with defendant because he "needed a place to stay." Henson came up with the moniker, "The Money Team [(TMT)]," for acquiring money in "[a]ny way possible." The members of TMT included himself, defendant, and Friend. Over a defense objection, Henson testified defendant sold

- 4 -

cocaine.

¶ 20        Henson testified on October 1, 2017, he received a call where defendant stated someone "tried to jump on me again," but he gave no specifics. Henson followed defendant in the "white Cadillac" to Pratt's apartment, where both vehicles stopped. Henson testified he did not have guns. Upon arriving at the apartment, Henson heard gunshots and observed defendant and Friend holding guns. Henson testified he observed Friend firing his gun and saw defendant holding a revolver. Henson admitted he previously gave a proffered statement to police that he saw defendant "shoot a gun."

¶ 21                              3. *The Trial Court's Ruling*

¶ 22        The trial court found defendant guilty of counts I, II, III, and V. Counts II and III merged at sentencing. The court sentenced defendant to consecutive sentences of 55, 21, and 10 years in prison. Defendant filed a motion to reconsider his sentences, arguing they were excessive, which the court denied. On direct appeal, this court affirmed defendant's conviction and sentence. *Thomas*, 2021 IL App (4th) 190099-U, ¶ 3.

¶ 23        Relevant to this appeal, the trial court found Pratt's testimony to be credible where Pratt identified his shooters and their positions. The court emphasized Pratt could "specifically identify where he was shot by both of these individuals." The court stated it believed Pratt's late disclosure identifying his shooters was due to "this code of silence that often goes with this type of activity." Further, the court found Henson to be credible, noting, although he was reluctant to testify, Henson "put the gun in the Defendant's hand."

¶ 24                        B. Initial Postconviction Proceedings

¶ 25        In August 2019, defendant *pro se* filed a postconviction petition under the Act, alleging, *inter alia*, his trial counsel was ineffective for failing to move to discharge his case on

the grounds of a speedy-trial violation. Defendant's initial petition further argued actual innocence based on newly discovered evidence of a new affidavit from Henson. According to Henson's signed May 2019 affidavit, he "lied" when he testified defendant had a gun because defendant "never had a gun" and "never shot anybody."

¶ 26     After 90 days lapsed on the petition, the trial court docketed defendant's petition for second-stage proceedings and appointed postconviction counsel (see *People v. Starks*, 2012 IL App (2d) 110324, ¶ 23). Defendant's initial petition was incorporated in subsequent petitions. The trial court dismissed defendant's second amended petition on the State's motion. This court affirmed. *Thomas*, 2022 IL App (4th) 210746-U, ¶ 59.

¶ 27                    C. Successive Postconviction Proceedings

¶ 28     In April 2022, defendant moved for leave to file a successive postconviction petition. His successive petition alleged actual innocence based on newly discovered evidence. Defendant attached several exhibits, including (1) Friend's April 2022 affidavit, (2) Friend's sentencing order, (3) the trial court's order dismissing his initial postconviction petition, (4) Detective Matthew Comstock's November 2017 affidavit, (5) Rose's April 2019 affidavit, and (6) photographic evidence introduced at trial. In supplemental successive petitions, defendant attached (1) Boitumelo Schultz's June 2022 affidavit and (2) Karissa Metelko's January 2023 affidavit. The affidavits of Friend, Schultz, and Metelko are relevant to this appeal.

¶ 29                         1. *Friend's Affidavit*

¶ 30     Friend pleaded guilty to attempted murder in exchange for a 26-year sentence based on his involvement in this case. Following his conviction, Friend was an inmate in DOC at the time his new affidavit was executed in April 2022. See *Illinois Department of Corrections-Inmate Search*, Illinois Department of Corrections, available at https://www.idoc.state.il.us/

subsections/search/inms_print.asp?idoc=Y34531 (last visited May 18, 2026); see also *People v. Young*, 355 Ill. App. 3d 317, 321 n.1 (2005) ("[W]e may take judicial notice of information that [DOC] has provided on its website.").

¶ 31 According to Friend's 2022 affidavit, Pratt lied when he identified defendant as one of his shooters in the October 2017 shooting where Friend was present, Friend saw Henson shoot, and "defendant yelled out, '[D]on[']t shoot." Friend further alleged, in Galesburg Correctional Center, he asked Henson why he lied about defendant's involvement in the shooting and Henson replied he "did not want to go to prison for a long time." According to Friend, Henson stated "he felt bad about what he did and would admit to the courts that he lied and would take responsibilities [*sic*] for his actions before the shooting started." Lastly, Friend stated he was advised by his attorney not to come forward "with this information sooner" because it would "affect [his] plea deal with the State."

¶ 32                                    2. *Schultz's Affidavit*

¶ 33 In a supplemental petition, defendant attached Schultz's June 2022 affidavit, alleging it was "newly discovered evidence." Schultz's affidavit states her discussion with Henson following the shooting and her presence at defendant's trial:

"On October 1[,] 2017, Shondale Henson came to my (Boitumelo Schultz['s]) apartment and asked for a ride to Chicago. He told me that [defendant] wouldn't take him because he was mad at him, and he needed to leave as soon as possible. After we got on the interstate, heading towards Chicago, I asked [Henson] why [defendant] was mad at him and he told me because he had shot [Pratt] and [Rose]. Up until this point I had been in a relationship with [Henson], but after he told me what he had done we broke up. I tried to contact

- 7 -

[defendant's] lawyer before trial and let him know what had happened, and even came to trial as he requested (through [defendant]) however. I never got to speak directly to the attorney. And I was never called as a witness."

Defendant's supplemental petition further alleged his trial counsel was ineffective for failing to investigate Schultz as a witness. We note, from the record, Schultz was listed as a witness at defendant's trial and was present during trial.

¶ 34                                    3. *Metelko's Affidavit*

¶ 35        In an additional supplemental petition, defendant attached Metelko's May 2023 affidavit. Metelko's affidavit alleged she spoke with Pratt, "the uncle to [her] daughter," at a New Year's Eve party she attended "with friends and family" on December 31, 2022. According to Metelko's affidavit, she "heard rumors around that [Pratt] had lied" to police when he stated defendant "had shot him because [defendant] wouldn't bond him and his child's mother out of jail." Metelko alleged she "asked [Pratt] if it was true and he said yeah dude should of [*sic*] just paid the money." Metelko further alleged Pratt admitted "the second shooter was someone he [had] never seen before" and "he would be charged with perjury" if he came forward with the truth. Lastly, Metelko alleged Pratt explained "he made a deal with a detective that if he told on [defendant] that his [girlfriend] wouldn't go to prison and he could get a plea deal from the State for his drug case." We note, for his testimony in this case, the State offered Pratt a seven-year sentence for possession of cocaine in his unrelated case.

¶ 36                                    4. *The Trial Court's Ruling*

¶ 37        On July 24, 2023, the trial court dismissed defendant's motion for leave to file a successive postconviction petition and his two supplemental petitions. The court's order stated, "When considering the attached affidavits as true, as a matter of law, [defendant] has not and

cannot set forth a colorable claim of actual innocence."

¶ 38    This appeal followed.

¶ 39                    II. ANALYSIS

¶ 40    On appeal, defendant argues the trial court erred in denying his motion for leave to file a successive postconviction petition because he raised a colorable claim of actual innocence. Defendant contends the three affidavits from Friend, Schultz, and Metelko constituted newly discovered evidence. We disagree and affirm.

¶ 41                A. Standard of Review

¶ 42    Under the Act, a defendant may raise a constitutional issue that was not, and could not have been, adjudicated on direct appeal. *People v. Pitsonbarger*, 205 Ill. 2d 444, 455-56 (2002). "Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2022). While the Act generally contemplates the filing of a single postconviction petition, the statutory bar to a successive petition will be relaxed where the defendant can show cause and prejudice regarding his claim. *People v. Morgan*, 212 Ill. 2d 148, 153 (2004). Alternatively, a defendant may assert an actual innocence claim based on newly discovered evidence. *Morgan*, 212 Ill. 2d at 154. In the postconviction context, evidence is "newly discovered" if it was not available at trial and could not have been discovered earlier through diligence. *Morgan*, 212 Ill. 2d at 154. Such evidence must be material, noncumulative, and "of such conclusive character that it would probably change the result on retrial." *Morgan*, 212 Ill. 2d at 154. An actual innocence claim set forth in a postconviction petition is not subject to the cause and prejudice test. *People v. Ortiz*, 235 Ill. 2d 319, 330-31 (2009). The due process clause of the Illinois Constitution affords postconviction petitioners the right to assert a freestanding claim of actual innocence based on newly discovered

evidence. *Ortiz*, 235 Ill. 2d at 331.

¶ 43   "At the pleading stage of postconviction proceedings, all well-pleaded allegations in the petition and supporting affidavits that are not positively rebutted by the trial record are to be taken as true." *People v. Robinson*, 2020 IL 123849, ¶ 45. "Where *** a petitioner raises an actual innocence claim in a motion for leave to file a successive postconviction petition, the petitioner should be denied leave to file only where, as a matter of law, no colorable claim of actual innocence has been presented." *People v. Prante*, 2023 IL 127241, ¶ 74. We review *de novo* whether a successive postconviction petition sets forth a colorable claim of actual innocence. *Robinson*, 2020 IL 123849, ¶¶ 39-40.

¶ 44                               B. This Case

¶ 45   Defendant requests this court reverse the trial court's denial of his motion to file a successive postconviction petition because he raised a colorable claim of actual innocence based on newly discovered evidence. Because we find the three affidavits attached to defendant's successive petition do not constitute newly discovered evidence, we affirm.

¶ 46                            1. *Friend's 2022 Affidavit*

¶ 47   Defendant argues Friend's affidavit constitutes newly discovered evidence Pratt and Henson falsely implicated defendant as a shooter. Defendant contends Friend's testimony was not available at trial because Friend was a codefendant with a fifth amendment (U.S. Const., amend. V) right to avoid self-incrimination. We note, at defendant's trial, Pratt and Henson identified Friend as an active shooter at the scene. Friend pleaded guilty to attempted murder on February 4, 2019, after defendant was convicted.

¶ 48   We find Friend's affidavit does not constitute newly discovered evidence because (1) the doctrine of *res judicata* applies where the same evidence was presented in Henson's 2019

affidavit to claim actual innocence and (2) the evidence is not of such conclusive character to probably change the result on retrial.

¶ 49 We agree with the State that where evidence was previously brought in defendant's original postconviction petition to claim actual innocence, relitigating the same issue in a subsequent petition is barred by *res judicata*.

> "There is no question that, generally, postconviction petitions are subject to the doctrine of *res judicata*, so that all issues actually decided on direct appeal or in the original postconviction petition are barred from being relitigated in subsequent petitions. [Citation.] More specifically, this also applies to claims of actual innocence, insofar as they are not new or predicated upon new evidence." *People v. Anderson*, 402 Ill. App. 3d 1017, 1029 (2010).

In denying defendant's motion for leave to file a successive postconviction petition, the trial court also noted, "Henson's recantation of his trial testimony is not new evidence" but "was previously litigated" in the initial postconviction proceedings.

¶ 50 During initial postconviction proceedings, defendant claimed actual innocence based on Henson's 2019 affidavit, where Henson recanted his trial testimony and apologized for lying on the stand. In the affidavit, Henson claimed he "did not see [defendant] with a gun" where defendant "never had a gun" and "never shot anybody." Henson alleged he lied and "said what the detectives wanted to hear" because he was "looking out for [himself]" and "that was not the right thing to do." Henson's affidavit stated he was "willing to except [*sic*] any consequences" for lying. Henson's affidavit further alleged, when defendant saw Friend with a gun at the scene, defendant said, " '[D]on[']t shoot.' "

¶ 51 In his motion to file a successive postconviction petition, defendant claims actual

innocence based on Friend's 2022 affidavit. Friend's affidavit alleges, while in custody at Galesburg Correctional Center, Henson admitted to Friend he lied about defendant's involvement in the shooting. Henson "felt bad about what he did and would admit to the courts that he lied and would take responsibilities [*sic*] for his actions before the shooting started." Friend's affidavit further alleges, "Before the shooting started [defendant] yelled out 'don[']t shoot.' " Where this evidence mirrors Henson's 2019 affidavit, we find defendant's claim of actual innocence was previously litigated in his initial postconviction proceedings and is therefore barred by *res judicata*.

¶ 52    To the extent Friend's affidavit is not barred by *res judicata*, we find the evidence in Friend's affidavit does not satisfy the conclusive character element for actual innocence. Our supreme court has stressed "[t]he conclusive character of the new evidence is the most important element of an actual innocence claim." *Robinson*, 2020 IL 123849, ¶ 47 (citing *People v. Washington*, 171 Ill. 2d 475, 489 (1996)). The conclusive character of newly discovered evidence means the evidence, when considered along with the trial evidence, would probably lead to a different result. *People v. Coleman*, 2013 IL 113307, ¶ 96.

¶ 53    At trial, Pratt repeatedly identified defendant and Friend as the shooters who fired shots at him and Rose. Pratt testified he was shot twice in the left arm by defendant. The State admitted photographs of Pratt's bullet wounds. Henson testified he "heard gunshots" when he arrived at Pratt's house in the Cadillac. Henson stated both defendant and Friend "had guns" when they "stepped out" of defendant's car. Henson testified he "[p]ositively" saw Friend shoot. Henson admitted he gave a previous statement to law enforcement that he "saw [defendant] shoot a gun." Defendant testified he saw Friend "get out of the car" with a gun and he yelled, "[D]on't shoot." Defendant testified, after that point, "the shots were going off," and defendant

- 12 -

"hid behind [his] vehicle." We note the trial court found the testimony of Pratt and Henson to be credible.

¶ 54    Friend's affidavit states, "Pratt lied when he identified [defendant] as one of the shooters during the incident that took place on October 1[,] 2017. I know this because I was there." Cumulative of defendant's testimony, Friend's affidavit claims defendant "yelled out '[D]on[']t shoot' " before the shooting commenced. Friend's affidavit states "Shondale Henson was one of the shooters" and provides no other details about the shooting. As the trial court noted, Friend's affidavit "fails to acknowledge he was in fact one of the shooters" and "Friend was Convicted of Attempt (First Degree Murder)" for his actions in this case. The trial evidence overwhelmingly identifies defendant and Friend as the shooters. The new evidence of Friend's affidavit is not of such conclusive character, when considered along with the trial evidence, that the new evidence would lead to a different result. An affidavit by the other shooter, relating defendant's testimony at trial, is hardly new evidence. Therefore, Friend's affidavit does not constitute newly discovered evidence. See *Morgan*, 212 Ill. 2d at 154 (stating newly discovered evidence is "of such conclusive character that it would probably change the result on retrial").

¶ 55                            2. *Schultz's 2022 Affidavit*

¶ 56    Defendant argues Schultz's affidavit constitutes newly discovered evidence. The State argues this evidence was available at trial and could have been discovered earlier through due diligence. In support of its position, the State cites *People v. Mitchell*, 2012 IL App (1st) 100907, ¶ 49, where the Appellate Court, First District, held a witness's testimony was not "newly discovered" when the witness was listed in discovery but not investigated by defense counsel. We agree with the State.

¶ 57    First, we note the evidence in Schultz's affidavit was available at the time of

- 13 -

defendant's trial because it concerned her alleged interactions with Henson on the day of the shooting. See *Morgan*, 212 Ill. 2d at 154 ("To win relief under [actual innocence], the evidence adduced by the defendant must first be 'newly discovered.' That means it must be evidence that was not available at [the] defendant's original trial and that the defendant could not have discovered sooner through diligence."). We further note the record indicates Schultz was listed as a witness at defendant's trial and was present at trial, although she was ultimately not called to testify. Under these circumstances, Schultz's testimony is not newly discovered. See *Mitchell*, 2012 IL App (1st) 100907, ¶ 49 ("We will consider evidence newly discovered after the trial if the defendant and his attorney could not have found the evidence earlier by the use of due diligence.").

¶ 58          Schultz's affidavit states she "never got to speak directly to [defendant's] attorney" though she "tried to contact" him and "came to trial as he requested." When taken as true that Schultz was not investigated, *Mitchell* counsels her testimony cannot be newly discovered where it could have been discovered earlier through due diligence. See *Mitchell*, 2012 IL App (1st) 100907, ¶ 49 (finding witness testimony was not newly discovered where the witness was known but not investigated by the defense).

¶ 59                                    3. *Metelko's 2023 Affidavit*

¶ 60          Defendant argues Metelko's affidavit constitutes newly discovered evidence. The State argues Metelko's affidavit "is cumulative to evidence that was available prior to trial and known to defendant" through defense witness Lacey Shelabarger. The State quotes *People v. Mendoza*, 2024 IL App (1st) 231588, ¶ 48, arguing " 'it is [the] evidence that must be newly discovered and not necessarily the source.' "

¶ 61          Metelko's affidavit alleges she "heard rumors around that [Pratt] had lied" to

police about defendant's involvement in the shooting "because [defendant] wouldn't bond him and his child's mother out of jail." Metelko alleges Pratt confirmed the rumors by saying, "yeah dude should of [*sic*] just paid the money." In denying defendant's motion for leave to file a successive postconviction petition, the trial court found Metelko's affidavit was "not new evidence" where "Shelabarger raised the same issue as to a request for money or [defendant] would go to jail."

¶ 62        We note the record shows Shelabarger was listed as a defense witness but was not called to testify. During initial postconviction proceedings, defendant attached Shelabarger's 2021 affidavit. According to her affidavit, Shelabarger "made a phone call to [defendant] in 2017 around the time of the shooting," where she told defendant Pratt "said he wanted $25,000 or [defendant] was going to jail." Shelabarger also made the phone call at the direction of a drug dealer and "was told *** what to say." Shelabarger indicated she "talked to [defendant's] trial counsel regarding this information once in person and once on the phone." Shelabarger also indicated she was "present for the trial and believed [she] would be testifying" but was ultimately "never called to testify."

¶ 63        We agree with the State that because evidence of Pratt threatening defendant to pay money or go to jail was available at defendant's original trial, Metelko's affidavit does not constitute newly discovered evidence. See *Morgan*, 212 Ill. 2d at 154 (explaining "newly discovered" evidence "must be evidence that was not available at [the] defendant's original trial and that the defendant could not have discovered sooner through diligence").

¶ 64        Metelko's affidavit further states that Pratt explained "he made a deal with a detective that if he told on [defendant] that his [girlfriend] wouldn't go to prison and he could get a plea deal from the State for his drug case." We agree with the State this evidence is not newly

discovered where Pratt's plea deal was "well established at the time of his testimony" and entered into evidence "[a]s required by law." The record shows Pratt's plea deal did not provide his girlfriend with any consideration.

¶ 65        Lastly, defendant argues Metelko's affidavit contains new evidence not available at defendant's original trial where "Pratt admitted to Metelko, after trial, that he falsely implicated defendant at trial." Metelko's affidavit states Pratt told her that "the second shooter was someone he [had] never seen before." We find evidence of Pratt's "confession" to Metelko, while not available at trial, is not of conclusive character. See *Coleman*, 2013 IL 113307, ¶ 96 ("Substantively, in order to succeed on a claim of actual innocence, the defendant must present new, material, noncumulative evidence that is so conclusive it would probably change the result on retrial."); see also *People v. Steidl*, 177 Ill. 2d 239, 260 (1997) ("[T]he recantation of testimony is regarded as inherently unreliable, and a court will not grant a new trial on that basis except in extraordinary circumstances.").

¶ 66                                III. CONCLUSION

¶ 67        For the reasons stated, we affirm the trial court's denial of defendant's motion to file a successive postconviction petition.

¶ 68        Affirmed.